**GIBSON, DUNN & CRUTCHER LLP**
Matthew J. Williams
John Conte
200 Park Avenue
New York, NY 10166
(212) 351-4000 (Tel)
(212) 351-4035 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PT SRI REJEKI ISMAN TBK, *et al.*,[1] | Case No. 21-_____ |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

### VERIFIED PETITION OF INDONESIA FOREIGN DEBTORS UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING

Geoffrey David Simms in his capacity as the authorized foreign representative (the "***Foreign Representative***") of PT Sri Rejeki Isman Tbk ("***Sritex***"), PT Bitratex Industries ("***BIS***"), PT Sinar Pantja Djaja ("***SPD***"), and PT Primayudha Mandirijaya ("***PMJ***") (collectively, the "***Indonesia Foreign Debtors***") in connection with their foreign proceedings (collectively, the "***PKPU Proceedings***") pending in the Commercial Court of the District Court of Semarang (the "***Indonesian Court***"), pursuant to Indonesian Insolvency Law (as defined below), by and through his undersigned counsel, respectfully submits this verified petition (together with the

---

[1] The Foreign Debtors in these chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

*Chapter 15 Petition for Recognition of a Foreign Proceeding (Official Form 401)* filed immediately prior hereto for each Indonesia Foreign Debtor, the "***Petitions***") in support of entry of an order pursuant to section 1517(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "***Bankruptcy Code***") (a) finding that (i) the Indonesia Foreign Debtors are each eligible to be a "debtor" under Chapter 15 of the Bankruptcy Code, (ii) each PKPU Proceeding is the "foreign main proceeding" for each Indonesia Foreign Debtor within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code, and (iv) the Petitions for each Indonesia Foreign Debtor was properly filed and meets the requirements of section 1515 of the Bankruptcy Code, and (b) granting recognition of each PKPU Proceeding as a foreign main proceeding under sections 1517, 1520 and 1521 of the Bankruptcy Code.

In support of the Petitions, the Foreign Representative submits the (a) *Declaration of Foreign Representative in Support of Verified Chapter 15 Petition of Indonesia Foreign Debtors and Motion for Provisional Relief* (the "***Simms Declaration***") and (b) *Declaration of Gregorius Petrus Aji Wijaya in Support of the Verified Chapter 15 Petition of Indonesia Foreign Debtors and Motion for Provisional Relief* (the "***Wijaya Declaration***"), each of which has been filed contemporaneously herewith and is incorporated herein by reference as if fully set forth herein.  In further support of the Petitions, the Foreign Representative respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Indonesia Foreign Debtors' cases have been properly commenced pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code by the filing of the Petitions seeking recognition of the PKPU Proceedings as foreign main proceedings under section 1515 of the Bankruptcy Code.  Contemporaneously herewith, the Singapore Foreign Debtors (as defined

herein, and together with the Indonesia Foreign Debtors, the "***Foreign Debtors***"), which are affiliates of the Indonesia Foreign Debtors, have also commenced cases under Chapter 15 of the Bankruptcy Code seeking, *inter alia*, recognition of their foreign proceedings pending in the General Division of the High Court of the Republic of Singapore.  The Indonesia Foreign Debtors and the Singapore Foreign Debtors have filed a motion requesting joint administration of their Chapter 15 cases for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference to Bankruptcy Judges of the District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Each of the Indonesia Foreign Debtors has paid a retainer to Gibson, Dunn & Crutcher LLP ("***Gibson Dunn***").  Simms Declaration ¶ 42.  The retainers are each held in a bank account located in this District.  *Id.*  Additionally, all of the Indonesia Foreign Debtors are parties to one or more indentures governed by New York law, as well as an unsecured bilateral credit facility governed by New York law, each as described below.  *Id.* ¶ 16, 19, 20, 22.  Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1410(1).  This District will likely be convenient to any creditors who might seek to challenge the Foreign Representative's request for recognition of the PKPU Proceedings as foreign main proceedings in these Chapter 15 cases because of New York's centrality in international finance and commerce.  Accordingly, venue in this District is consistent with the interests of justice and the convenience of the parties pursuant to 28 U.S.C. § 1410(3).

4.     The statutory bases for relief are sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

**I.     Overview of the Indonesia Foreign Debtors**

**A.     Overview of the Indonesia Foreign Debtors' Businesses**

5.     The Indonesia Foreign Debtors consist of Sritex, a public company listed on the Indonesia Stock Exchange, and its subsidiaries, BIS, SPD, and PMJ.   Each of the Indonesia Foreign Debtors is incorporated under the laws of Indonesia with registered offices in Indonesia. *Id.* ¶ 6.   The registered address of the headquarter of the Indonesia Foreign Debtors is Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia.   *Id.* ¶ 6.   The board of directors and board of commissioners of each of the Indonesia Foreign Debtors are comprised of Indonesia residents.  *Id.* ¶ 6.

6.     The Indonesia Foreign Debtors are part of a group of companies (the "***Sritex Group***"), comprised of: (a) the Indonesia Foreign Debtors, and (b) Golden Legacy Pte Ltd ("***Golden Legacy***") and Golden Mountain Textile and Trading Pte Ltd ("***Golden Mountain***" and together with Golden Legacy, the "***Singapore Foreign Debtors***"), which are companies incorporated under the laws of Singapore.   Golden Legacy and Golden Mountain have, concurrently with the Indonesia Foreign Debtors, commenced Chapter 15 cases for recognition of their parallel restructuring proceedings in Singapore.  The corporate structure of the Sritex Group is set forth in the diagram below. *Id.* ¶ 7.



7.      The Sritex Group is one of the largest vertically integrated textile manufacturers in Southeast Asia.  The Sritex Group produces a variety of midstream and downstream products, including yarn, greige (or raw fabric), finished fabric and apparel, including uniforms and retail clothing.  *Id.* ¶ 8.  It sells its products domestically in Indonesia and internationally in over 50 countries and its customers have included some of the world's largest downstream textile manufacturers in India and China, as well as major global retailers and corporations.  *Id.* ¶ 8.  The Sritex Group is also one of only a few suppliers outside Europe certified to produce military uniforms to Germany.  Since its inception, the Sritex Group's military uniforms have been sold to 30 countries, including Germany, Austria, the United Kingdom, Australia, the United Arab Emirates, Malaysia and Indonesia.  *Id.* ¶ 8.

8.      The Indonesia Foreign Debtors are the primary operating companies within the Sritex Group and their production facilities are all located in Central Java, Indonesia, as follows:

(a)      Sritex's production facilities are located on approximately 61 hectares of land in Sukoharjo;

(b)      BIS' production facilities are located on approximately 24 hectares of land in Semarang, approximately 117 kilometers from Sritex's production facilities;

(c)      SPD's production facilities which produce yarn are located on approximately 18 hectares of land in Semarang, approximately 120 kilometers from Sritex's production facilities; and

(d)      PMJ's production facilities are located on approximately 22 hectares of land in Boyolali, approximately 60 kilometers from Sritex's production facilities.

5

9.     The Indonesia Foreign Debtors do not have operations or material assets outside of

Indonesia.  *Id.* ¶ 14.

10.     The domestic Indonesian market is by far the largest market for the Sritex Group.

For the financial year ended December 31, 2020, domestic sales represent 40.56% of its total sales

by value.  Set out below is a summary breakdown of the sales of the Sritex Group for the financial

year ended December 31, 2020.  *Id.* ¶ 15.

|  | **Sales (US$)** |
|---|---|
| Domestic | 520,196,722 |
| International |  |
|    Asia | 448,738,711 |
|    Europe | 113,976,946 |
|    United States and South America | 119,132,694 |
|    United Arab Emirates and Africa | 78,523,067 |
|    Australia | 2,001,244 |
| *Net Sales* | *1,282,569,384* |

11.     Accordingly, a significant majority of each Indonesia Foreign Debtor's assets,

business operations, trade creditors and customers are located in Indonesia.

**B.     Overview of the Indonesia Foreign Debtors' Capital Structure**

12.     The Indonesia Foreign Debtors have a complex debt structure in light of the manner

in which they have financed their business and operations, characterized by the following:

(a)     There are four (4) main classes of financial indebtedness: (i) notes, (ii) syndicated
term loans, (iii) bilateral term and working capital loans, and (iv) lease financings.
The Indonesia Foreign Debtors' financial indebtedness is primarily denominated
in Indonesian Rupiahs ("***IDR***") and U.S. Dollars ("***US$***").

(b)     All of the Indonesia Foreign Debtors' financial indebtedness is governed by
Indonesian law with the exception of: (i) two series of notes issued pursuant to
indentures governed by New York law, (ii) a syndicated term loan facility
governed by Singapore law, (iii) a bilateral term loan facility governed by

Singapore law, and (iv) a bilateral loan facility from Citibank, N.A. ("*Citibank*") governed by New York law.

*Id.* ¶ 16.

13.     The table below sets out an overview of the financial indebtedness of the Indonesia

Foreign Debtors as of December 31, 2020.  *Id.* ¶ 17.

| (In Millions (US$))[2] | Indonesia Domiciled Lenders | Foreign Domiciled Lenders | Total |
|---|---|---|---|
| Notes | 25 | 375 | 400 |
| Syndicated Term Loans | 121 | 229 | 350 |
| Bilateral Term and Working Capital Loans | 189 | 93 | 282 |
| Lease Financings | 24 | - | 24 |
| **Total** | **359** | **697** | **1,056** |

*Notes*

14.     Sritex is the issuer of 5.8% medium term notes due 2021 pursuant to an indenture

governed by Indonesia law (the "*Domestic Notes*").  The Domestic Notes are not guaranteed by

any of the other Foreign Debtors.  As of December 31, 2020, the outstanding amount under the

Domestic Notes was US$25,000,000.  The Domestic Notes are listed on the Indonesia Stock

Exchange.  *Id.* ¶ 18.

15.     Sritex is also the issuer of 7.25% senior notes due 2025 (the "*2025 Notes*") pursuant

to a New York law governed indenture, dated as of October 16, 2019, by and among Sritex, as

issuer, Citicorp Investment Bank (Singapore) Limited ("*Citicorp*"), as trustee, and BIS, SPD and

PMJ, as guarantors (the "*2025 Indenture*").   As of December 31, 2020, the outstanding amount

under the 2025 Notes was US$225,000,000.  The 2025 Notes are listed on the Singapore Stock

Exchange.  *Id.* ¶ 19.  Each of the Indonesia Foreign Debtors are obligors of the 2025 Notes.  *Id.*

¶ 19.

---

[2]   The figures in the table consist of indebtedness denominated in U.S. Dollars, as well as indebtedness denominated in Indonesian Rupiahs that have been converted to U.S. Dollars at a foreign exchange rate of 14,105 Indonesian Rupiah to 1 U.S. Dollar.

16.     Additionally, Sritex and SPD are guarantors of US$150,000,000 6.875% senior notes due 2024 (the "***2024 Notes***," and together with the 2025 Notes, the "***Notes***") issued by Golden Legacy, a Singapore Foreign Debtor.  The 2024 Notes were issued pursuant to a New York law governed indenture, dated as of March 27, 2017, by and among Golden Legacy, as issuer, Citicorp, as trustee, and Sritex and SPD, as guarantors, (the "***2024 Indenture***" and together with the 2025 Indenture, the "***Indentures***") and are listed on the Singapore Stock Exchange.  The 2024 Notes are secured by the capital stock of Golden Legacy and Golden Mountain.  *Id.* ¶ 20.

*Syndicated Term Loan Facility*

17.     All of the Indonesia Foreign Debtors are obligors under a Singapore law governed syndicated term loan facility (the "***Syndicated Loan Facility***") pursuant to a Syndicated Facilities Agreement, dated March 20, 2019.  As of December 30, 2020, the outstanding amount under the Syndicated Loan Facility was US$350,000,000, of which US$121,000,000 was owed to 9 lenders domiciled in Indonesia (each, an "***Indonesia Domiciled Lender***") and US$229,000,000 was owed to 20 foreign lenders with domiciles outside of Indonesia (each, a "***Foreign Domiciled Lender***"). The final maturity date of the Syndicated Facility is 2 January 2022.  *Id.* ¶ 21.

*Bilateral Term and Working Capital Loans*

18.     As of December 31, 2020, Sritex had US$230,007,255 in bilateral term loans and working capital loans outstanding, consisting of (i) US$139,192,163 in indebtedness from nine (9) Indonesia Domiciled Lenders, and (ii) US$90,815,092 in indebtedness from five (5) Foreign Domiciled Lenders.  *Id.* ¶ 22.  Additionally, pursuant to a letter sent by Citibank on April 5, 2021, IDR 107,027,500,000 (approximately US$7,587,912) in principal amount of debt was due to it under, among others, a New York law governed Master Credit Facility Agreement, dated as of

December 19, 2016, by and between Sritex, as borrower, and Citibank (the "**New York Credit Facility**"). *Id.* ¶ 22.

19.     As of December 31, 2020, BIS had US$25,858,004 in bilateral and working capital loans outstanding, consisting of US$23,360,778 in indebtedness from three (3) Indonesia Domiciled Lenders, and US$2,497,226 in indebtedness from one (1) Foreign Domiciled Lender. *Id.* ¶ 23.

20.     As of December 31, 2020, PMJ had US$15,599,975 in bilateral and working capital loans outstanding, consisting of US$15,599,975 in indebtedness from three (3) Indonesia Domiciled Lender. *Id.* ¶ 24.

21.     As of December 31, 2020, SPD had US$10,401,658 in bilateral and working capital loans outstanding, consisting of US$10,401,658 in indebtedness from one (1) Indonesia Domiciled Lender. *Id.* ¶ 25.

*Lease Financings*

22.     As of December 31, 2020, Sritex had US$22,874,564 in outstanding indebtedness under lease financings, consisting of US$22,874,564 in indebtedness from six (6) Indonesia Domiciled Lenders. *Id.* ¶ 26.

23.     As of December 31, 2020, SPD had US$782,746 in outstanding indebtedness under lease financings, consisting of US$782,746 in indebtedness from two (2) Indonesia Domiciled Lenders. *Id.* ¶ 27.

24.     As of December 31, 2020, BIS had US$10,291 in outstanding indebtedness under lease financings, consisting of US$10,291 in indebtedness from one (1) Indonesia Domiciled Lender. *Id.* ¶ 28.

## II.    COVID-19 Pandemic and the Change of Sentiment towards the Textile Industry

25.    The COVID-19 pandemic presents an unprecedented challenge to textile manufacturers, including the Sritex Group, due to the vulnerability of garment supply chains to external demand and supply shocks and the fragile structural dynamic of the industry. Additionally, as a result of the COVID-19 pandemic, textile manufacturers have been and continue to be impacted by an increase in cash-to-cycle conversion which has a significant impact on the business and operations. In fact, a recent study carried out by the International Labour Office shows that the garment industry has been disproportionately hit by the COVID-19 with lockdowns and uncertainty led to a decrease of 60% to 70% in apparel sales from April to May 2020. *Id.* ¶ 29.[3]

26.    The COVID-19 pandemic also presents a significant operational challenge to the Sritex Group. The Sritex Group employs approximately 17,186 employees in its various production facilities and, during the COVID-19 pandemic, the Sritex Group has prioritized the health and safety of its employees. The Sritex Group recognizes and supports the Indonesian Government's efforts to combat the spread of the COVID-19 pandemic and has accordingly made valiant efforts to ensure the safety of its employees. The operational challenges led to increased pressure on the Sritex Group to maintain a sufficient workforce to meet production requirements. *Id.* ¶ 30. And while the Sritex Group has managed to operate during the COVID-19 pandemic, its financial health has deteriorated in the recent months as a result of the abrupt change of sentiment towards the textile industry. This has led to a series of credit rating downgrades. *Id.* ¶ 31.

---

[3] *See* International Labour Organization, *What next for Asian garment production after COVID-19* (2020), *available at* https://www.ilo.org/wcmsp5/groups/public/---asia/---ro-bangkok/---sro-bangkok/documents/publication/wcms_755630.pdf.

27.    The credit rating downgrades began on December 18, 2020 when Fitch Ratings revised the Sritex Group's outlook to negative at 'BB-' to, among other things, capture "*the potential risk that the weak funding environment might persist due to prolonged negative sentiment, especially towards the textile sector*".[4]  Fitch Ratings subsequently downgraded the Sritex Group's credit rating to 'B-' on March 25, 2021 and 'CCC-' on April 7, 2021.  Similarly, Moody's Investors Service downgraded the Sritex Group's corporate family rating to 'B1' on December 23, 2020, 'B3' on March 22, 2021 and 'Ca' on April 9, 2021.  *Id.* ¶ 32.

28.    The abrupt change of sentiment towards the textile industry and the subsequent credit rating downgrades (all of which were beyond the Sritex Group's control) caught the Sritex Group by surprise and derailed its liability management efforts.  *Id.* ¶ 33.  The Sritex Group's planned issuance of up to US$325,000,000 in notes to refinance its short-term liabilities could not be completed as the notes issuance had to be postponed due to the unfavorable market conditions caused by COVID-19.  *Id.* ¶ 33.  In addition, the Sritex Group faced an unprecedented challenge in obtaining consent from its syndicated lenders to an extension of the maturity of the Syndicated Loan Facility, and it was reported that the credit rating downgrades led to the banks' risk committees re-reviewing the Sritex Group's financials and subjecting them to more stress tests with new assumptions.  *Id.* ¶ 33.  Moreover, efforts to refinance the Syndicated Loan Facility were derailed, as Bank Central Asia and Bank Negara Indonesia, both of whom were previously in discussions with the Sritex Group regarding the refinancing of the Syndicated Loan Facility, began reconsidering the potential refinancing as a result of the credit rating downgrades.  *Id.* ¶ 33.  Lastly,

---

[4]  *See* Fitch Ratings Action Commentary, *Fitch Revises Outlook on Indonesia's Sritex to Negative; Affirms at 'BB-'/'A+(idn)* (December 18, 2020), *available at* https://www.fitchratings.com/research/corporate-finance/fitch-revises-outlook-on-indonesia-sritex-to-negative-affirms-at-bb-a-idn-18-12-2020 (emphasis added).

the Sritex Group's trade facilities were frozen and the Sritex Group started receiving demand letters from its creditors.  *Id.* ¶ 33.

## II.    Consensual Restructuring Process

29.    Not surprisingly, the resulting financial challenges culminated in a liquidity crisis. *Id.* ¶ 34.  Accordingly, on or around March 2021, the Sritex Group engaged Helios Capital and Assegaf Hamzah and Partners to pursue a potential restructuring process and issued a press release in relation thereto.  *Id.* ¶ 34.  On April 19, 2021, the PKPU Proceedings were commenced against the Indonesia Foreign Debtors by a trade creditor, CV Prima Karya ("***Prima Karya***").

## III.    The PKPU Proceedings

### A.    PKPU Proceedings Generally

30.    PKPU is an abbreviation for Penundaan Kewajiban Pembayaran Utang, an Indonesian phrase meaning "suspension of payments."  A PKPU proceeding is not an involuntary suspension of payments, but instead involves a court-enforced suspension of payments of creditor liabilities.  The court-enforced suspension of payments of creditor liabilities takes effect upon the granting of the PKPU application.  Wijaya Declaration ¶ 6.

31.    PKPU proceedings are governed by Law No. 37 of 2004 on Bankruptcy and Suspension of Debt Payment Obligations (the "***Indonesian Insolvency Law***").  An unofficial English translation of the Indonesian Insolvency Law is attached as **Exhibit A** to the Wijaya Declaration.  *Id.* ¶ 7.

32.    The Indonesian Insolvency Law contains several sections, one of which covers the declaration of a debtor's bankruptcy and the liquidation of a debtor's assets for the benefit of creditors (the "***Indonesian Bankruptcy Law***").  *Id.* ¶ 8.  Another section of the Indonesian Insolvency Law governs PKPU proceedings (the "***PKPU Law***").  *Id.*

33.     Indonesian PKPU proceedings, as set out in Article 222, paragraph 2 and 3 of the Indonesian Insolvency Law, are intended to permit a debtor to achieve an amicable settlement with its creditors and thereby avoid a declaration of bankruptcy by, and liquidation of, the debtor.  It is a process whereby the debtor proposes to its creditors a composition plan to restructure its debts and reorganize its business operations (a "***Composition Plan***").  *Id.* ¶ 9.

34.     Matters under the Indonesian Insolvency Law, including PKPU proceedings, are adjudicated in the Indonesian Court by a panel of three judges.  Judges of the Indonesian Court have specialized knowledge and experience in insolvency and other business law matters.  Only the ratification of a Composition Plan may be appealed to the Indonesian Supreme Court pursuant to Article 295 of the PKPU Law, while the PKPU Order (as defined below) of the Indonesian Court cannot be appealed to the Indonesian Supreme Court pursuant to Article 235 paragraph 1 of the PKPU Law.  *Id.* ¶ 10.

35.     The PKPU process commences with the filing of a PKPU application.  Pursuant to Article 222 of the PKPU Law, a PKPU proceeding can be voluntary (i.e., commenced either by the debtor itself), provided that it has more than one creditor and has failed to pay at least one debt which is due and payable, or involuntary (i.e., commenced by a creditor), if the creditor determines that the debtor will be unable to pay a debt that is due and payable.  *Id.* ¶ 11.

36.     If the application is submitted by a debtor, pursuant to Article 225(2) of the PKPU Law, the Indonesian Court must issue its order approving or denying the application within three days of the application.  If the application is submitted by a creditor, Article 225(3) of the PKPU Law provides that within 20 days of that filing, the Indonesian Court must issue its order approving or denying the application.  Pursuant to Article 224(4), an initial case hearing (the "***Initial PKPU Hearing***") must be scheduled within 45 days of the order commencing the PKPU proceeding.  As

described below, unless a Composition Plan has been proposed beforehand, at the Initial PKPU

Hearing, creditors vote whether to continue or dismiss the PKPU proceeding. The continuation of

the PKPU proceeding must then be approved by the Indonesian Court. *Id.* ¶ 12.

37.     If a PKPU application (either voluntary or involuntary) is granted, the PKPU

proceeding is commenced and a supervisory judge is appointed to oversee the proceeding. *Id.* ¶

13.  Pursuant to Article 225, (2) and (3) of the PKPU Law, the Indonesian Court also appoints one

or more independent administrators who, in accordance with Article 240, paragraph 1 of the PKPU

Law, together with the debtor, manages the PKPU proceeding which includes exercising control

over the debtor's assets during the PKPU proceeding. *Id.*

38.     Article 246 of the PKPU Law (a) implements a stay of all collection efforts against

the debtor during the PKPU proceeding and (b) stays secured creditors' rights to enforce their

security interest during the PKPU proceeding.  Article 242 of the PKPU Law provides that: (a) all

enforcement processes against the debtor to pursue debt settlement that were initiated before the

PKPU proceedings be suspended; and (b) upon the request of the independent administrators or

the supervisory judge, all attachments over the debtor and its assets are required to be lifted

immediately after a permanent suspension of payments declaration is issued by the court. *Id.* ¶ 14.

39.     Article 245 of the PKPU Law provides that, except for secured and other privileged

claims, the debtor is generally prohibited from paying any of its debts during the PKPU

proceeding, unless the payment is made to all of its creditors proportionally and without exception.

*Id.* ¶ 15.

40.     Additionally, Article 240 of the PKPU Law provides that, during the PKPU

proceeding, the debtor is barred from disposing assets or borrowing money without the approval

of the independent administrators appointed by the Indonesian Court.  Loans can only be approved

by the independent administrators if they increase the value of the debtor's assets.  If the borrowing requires the posting of collateral, the loan must be approved by the supervising judge.  *Id.* ¶ 16.

41.     Pursuant to Article 255 of the PKPU Law, a PKPU proceeding may be terminated by the Indonesian Court at the request of one or more creditors or the supervising judge if, *inter alia*, the debtor acts in bad faith in managing its assets during the PKPU proceeding or the debtor attempts to prejudice its creditors.  *Id.* ¶ 17.

42.     Pursuant to Article 224 of the PKPU Law, the debtor is required to file with the Indonesian Court a list of the types and amounts of receivables and debts.  *Id.* ¶ 18.

43.     The PKPU Law includes an equitable process for the submission and review of creditor claims.  Under the PKPU Law, all claims must be verified and written proofs must be submitted to the independent administrators.  Pursuant to Article 271 of the PKPU Law, the independent administrators are required to verify the claims against the debtor's records.  The administrators review the genuineness of the debts and, as provided under Article 272 of the PKPU Law, decide whether to either acknowledge or reject the submitted claims.  Under Article 280 of the PKPU Law, the supervisory judge also assesses the claims and may determine whether the creditors whose claims are rejected by the independent administrators can participate in voting on the proposed plan.  *Id.* ¶ 19.

**B.     PKPU Composition Plan**

44.     The goal of a PKPU proceeding is to present a Composition Plan to restructure the debtor's debts and reorganize its business operations.  *Id.* ¶ 20.

45.     Once a Composition Plan is proposed by a PKPU debtor, all parties in interest (the debtor, the creditors, and the independent administrators) enter into negotiations regarding the debtor's proposed Composition Plan and, pursuant to Article 268 of the PKPU Law, a meeting is

scheduled (the "***Initial Composition Plan Meeting***").  A Composition Plan requires the approval

of a majority in number and at least two-thirds in value of each class of debt of the debtor who

attend and vote at the Initial Composition Plan Meeting.  If the debtor's Composition Plan is not

accepted by the requisite majority of creditors, then a receiver is appointed and the debtor will be

declared bankrupt under the Indonesian Insolvency Law.  *Id.* ¶ 21.

46.    If the Composition Plan is not submitted before the Initial PKPU Hearing, the

requisite majority of creditors must vote on whether to allow for the extension of the PKPU

proceeding (an extension may not last beyond 270 days beyond the date of the declaration of the

temporary suspension of payments).  If an extension of time is granted, further creditors' meetings

may be held for the debtor to present its Composition Plan to its creditors.  Upon the debtor

showing reasonable endeavors to progress the PKPU process, it is common for an extension to be

granted should it be required.  At one of these meetings, the creditors will either vote to accept or

reject the Composition Plan or may once again extend the PKPU proceeding to allow the debtor

to put forward a restructuring proposal (provided that the aggregate of all extensions given do not

exceed 270 days).  *Id.* ¶ 22.

47.    If the Composition Plan is approved by creditors, it must then be ratified by the

Indonesian Court.  Under Article 284 of the PKPU Law, the independent administrators and the

creditors have an opportunity to object to the approval of the Composition Plan.  Pursuant to

Article 285 of the PKPU Law, the Indonesian Court can reject a Composition Plan accepted by

the requisite majority of creditors if, *inter alia* (a) the value of the debtor's assets is far greater than

the amount agreed upon in the Composition Plan; (b) there are significant issues regarding

implementation of the Composition Plan; (c) the plan is not proposed in good faith; or (d) the fees

and costs of the independent administrators have not been paid.  If the Composition Plan is rejected

by the Indonesian Court, then a receiver is appointed and the debtor is declared bankrupt and liquidated under the Indonesian Insolvency Law. *Id.* ¶ 23.

48.     Under Article 286 of the PKPU Law, if the proposed Composition Plan is approved by creditors and is thereafter approved by the Indonesian Court (which approval is by way of a homologation order (the "***Homologation Order***")), the Composition Plan will bind all creditors, except secured creditors that vote against the Composition Plan pursuant to Article 281 paragraph (2) of the PKPU Law. *Id.* ¶ 24.

49.     Pursuant to Article 285 paragraph (4) of the PKPU Law, a party may apply to the Indonesian Supreme Court for the annulment or cancellation (cassation) of the Homologation Order within 8 days from the date of the Homologation Order. *Id.* ¶ 25.

50.     After the Homologation Order has become final and binding (i.e. after the expiry of 8 days after the date of the order), a party may make a petition to the Indonesian Supreme Court under Article 295 of the PKPU Law for judicial review of the Homologation Order. *Id.* ¶ 26.

51.     In accordance with Article 291 of the PKPU Law, the debtor's failure to comply with the terms of an approved Composition Plan may result in an attempt by the debtor's creditors to nullify the plan and a declaration by the Indonesian Court of the debtor as bankrupt, which results in the appointment of a receiver and the liquidation of the debtor under the Indonesian Insolvency Law. *Id.* ¶ 27.

**C.**     **The Indonesia Foreign Debtors' PKPU Proceeding**

**1.**     **The Indonesia Foreign Debtors' PKPU Proceeding**

52.     On April 19, 2021, Prima Karya, a creditor of the Indonesia Foreign Debtors, filed an involuntary application (the "***PKPU Application***") to commence a PKPU proceeding against

the Indonesia Foreign Debtors.  Wijaya Declaration ¶ 31.  The PKPU Application is registered

under case no. 12/Pdt.Sus-PKPU/2021/PN Niaga Smg.  Wijaya Declaration ¶ 31.

53.    Sritex owes approximately US$375,000 to Prima Karya pursuant to a construction

contract entered in 2020 (the "***Prima Karya Debt***").  Each other Indonesia Foreign Debtor

guaranteed the Prima Karya Debt.  Simms Declaration ¶ 36.

### 2.  The PKPU Order

54.    On May 6, 2021, the Indonesian Court issued an order granting the PKPU

Application (the "***PKPU Order***").  A certified copy of the English translation of the PKPU Order

is attached to each of the Petitions.  The PKPU Order provides a 45-day moratorium on payments

(which can be extended by either (i) the Indonesian Court at the Initial PKPU Hearing or (ii) a

creditor vote and the Indonesian Court approval at the Initial PKPU Hearing), during which the

Indonesia Foreign Debtors are required to prepare a Composition Plan and seek agreement with

its creditors.  The Indonesia Foreign Debtors continue to operate in the ordinary course of business

under the protection of that moratorium.  Wijaya Declaration ¶ 32.

55.    In the PKPU Proceedings, Ester Megaria Sitorus, S.H.,M.Hum.was appointed as

the supervising judge and Alfin Sulaiman, S.H., M.H., Verry Sitorus S.H., M.H., Akhmad Henry

Setyawan, S.H., M.H., and Martin Patrick Nagel, S.H., M.H. were selected and appointed by the

Indonesian Court as the independent administrators.  *Id.* ¶ 33. The independent administrators have

acknowledged and approved the authority given to Mr. Simms by each of the Indonesia Foreign

Debtors to act as its Foreign Representative in these Chapter 15 Cases.  Simms Declaration ¶ 39.

56.    On May 10, 2021, the independent administrators provided notice of the proceeding

to known creditors by registered mail and published notice in Harian Tribun Jateng and the State

Gazette of the Republic of Indonesia.  Wijaya Declaration ¶ 34.

18

57.     In the PKPU Proceedings, the Indonesia Foreign Debtors intend to present a Composition Plan that would allow the Indonesia Foreign Debtors to avoid liquidation, ensure the continued employment of the employees, and maximize value for all stakeholders in an equitable manner.  Wijaya Declaration ¶ 35.

C.     **The Chapter 15 Cases**

58.     On the date hereof, the Foreign Representative filed an Official Form 410 (Chapter 15 Petition for Recognition of a Foreign Proceeding) on behalf of each of the Indonesia Foreign Debtors commencing these Chapter 15 cases (the "***Chapter 15 Cases***").  Simms Declaration ¶ 41.

## RELIEF REQUESTED

59.     The Foreign Representative respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to section 1517(a) of the Bankruptcy Code (a) finding that (i) the Indonesia Foreign Debtors are each eligible to be a "debtor" under Chapter 15 of the Bankruptcy Code, (ii) each of the PKPU Proceedings is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code and (iv) the Petition was properly filed and meets the requirements of section 1515 of the Bankruptcy Code, and (b) granting recognition of each of the PKPU Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code and the relief granted under sections 1520 and 1521 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

I.     **The Indonesia Foreign Debtors Are Each Eligible to be a "Debtor" Under Chapter 15 of the Bankruptcy Code**

60.     Each Indonesia Foreign Debtor qualifies as a "debtor" as that term is defined in section 1502(1) of the Bankruptcy Code because it is an "entity," which includes corporations. *See*

11 U.S.C. §§ 101(15) (definition of "entity," which includes a "person") and 101(41) (definition

of "person," which includes "corporations").   As noted above, each of the Indonesia Foreign

Debtors is a private company incorporated under the laws of Indonesia.  Simms Declaration ¶ 6.

61.    The Indonesia Foreign Debtors each have property in the United States for purposes

of being eligible under section 109(a) of the Bankruptcy Code, which requires that a debtor must

either reside or have a domicile, a place of business, or property in the United States. 11 U.S.C.

§ 109(a); *see Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238

(2d Cir. 2013) (holding that section 109(a) applies to Chapter 15 debtors).   Courts in this District

have required that the debtor have only nominal property in the United States to be eligible to file

a Chapter 15 case.  *See, e.g., In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249

(S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have

required only nominal amounts of property to be located in the United States, and have noted that

there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy

proceedings."); *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("There

is no statutory requirement as to the property's minimum value.").

62.    As noted above, each Indonesia Foreign Debtor meets the flexible threshold for

having property in the United States as required under section 109(a) of the Bankruptcy Code

because each Indonesia Foreign Debtor has an interest in the retainer that it paid to its counsel, and

each retainer is being held in a New York bank account.  *See In re Octaviar Admin. Pty Ltd.,* 511

B.R. 361, 372-374 (Bankr. S.D.N.Y. 2014) (noting the "line of authority that supports the fact that

prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible

to file in the United States," and holding that cash in a client trust account maintained by U.S.

counsel to the foreign representative satisfied section 109(a)); *In re Suntech Power Holdings Co.,*

*Ltd.*, 520 B.R. 399, 413-416 (Bankr. S.D.N.Y. 2014) (holding that a New York bank account over which Chapter 15 debtor possessed power to direct disbursement of funds was property sufficient to establish eligibility for Chapter 15 case in New York).

63.     Moreover, each Indonesia Foreign Debtor is a party to the 2025 Indenture, and Sritex and SPD are guarantors under the 2024 Indenture, which are each governed by New York law.  Pursuant to the Indentures, each Indonesia Foreign Debtor has consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the Notes. Similarly, Sritex is a borrower under the New York Credit Facility, which is governed by New York law.  Simms Declaration ¶ 16.  The New York choice of law and forum selection clauses in the Indentures and New York choice of law provision in the New York Credit Facility fulfill the section 109(a) "property in the United States" requirement.  *See In re U.S. Steel Canada Inc*., 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) ("[P]roperty rights can be and typically are tied to the location of the governing law of the contract . . . debt subject to a New York governing law clause and a New York forum selection clause constitutes property in the United States"); *In re Berau Capital Resources Pte Ltd* (*In re Berau*), 540 B.R. 80, 82-84 (Bankr. S.D.N.Y. 2015) (holding that dollar denominated debt documents governed by New York law and containing New York forum selection clauses satisfied the eligibility requirements under section 109(a)).

64.     Accordingly, each Indonesia Foreign Debtor is eligible to be a Chapter 15 debtor.

**IV.    The PKPU Proceedings are Each Foreign Main Proceedings**

65.     The Indonesia Foreign Debtors' PKPU Proceedings are entitled to recognition as foreign main proceedings under Chapter 15 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides that, subject to section 1506 of the Bankruptcy Code, a court "shall" enter an order granting recognition of a foreign proceeding if:

(i)      such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code;

(ii)     the foreign representative applying for recognition is a person or body; and

(iii)    the petition meets the requirements of section 1515 of the Bankruptcy Code.

11 U.S.C. § 1517(a); *see* H.R. Rep. 109-31, pt. 1 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings . . . [t]he requirements of this section . . . are all that must be fulfilled to attain recognition."). Section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Here, all of the requirements for recognition of each PKPU Proceeding as a foreign main proceeding are satisfied.

### A.      The PKPU Proceedings Constitute "Foreign Proceedings"

66.     The PKPU Proceedings are "foreign proceedings" under Chapter 15 of the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  Based on this definition, courts have held that a "foreign proceeding" is one:

(1)     in which acts and formalities are set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice;

(2)     that has either a judicial or an administrative character;

(3)     that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors;

(4)  that is located in a foreign country;

(5)  that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;

(6)  in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

(7)  that is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Oversight & Control Comm'n of Avánzit, S.A.,* 385 B.R. 525 (Bankr. S.D.N.Y. 2008) (discussing factors).

67.    The PKPU Proceedings were commenced pursuant to the Indonesian Insolvency Law.  As noted above, the Indonesian Insolvency Law contains two sections, one of which covers the declaration of the debtor's bankruptcy and the liquidation of the debtor's assets for the benefit of creditors.  The other section of the Indonesian Insolvency Law, PKPU Law, governs PKPU proceedings.

68.    Indonesian PKPU proceedings are intended to achieve an amicable settlement with the debtor's creditors and avoid a declaration of the debtor's bankruptcy and liquidation of the debtor.  It is a process under which the debtor proposes a composition plan to its creditors to restructure its debts and reorganize its business operations. Wijaya Declaration ¶ 9.  Matters under the Indonesian Insolvency Law, including PKPU proceedings, are administered in the Indonesian Court.  Cases in the Indonesian Court are adjudicated by a panel of three judges. *Id.* ¶ 10.  In PKPU proceedings, a supervisory judge is appointed to oversee the proceeding. *Id.* ¶ 13. Restructuring plans pursuant to the PKPU Law, like Chapter 11 proceedings under the Bankruptcy Code, provide mechanisms for the orderly reorganization of the debtor. *Id.* ¶ 20.

69. Accordingly, the PKPU Proceedings are clearly a judicial proceeding under Indonesian law relating to insolvency or adjustment of debt in which the assets and affairs of the Indonesia Foreign Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation. As such, this Chapter 15 case concerns a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code.

70. Courts in this District and elsewhere have recognized PKPU proceedings as foreign proceedings. *See In re PT Delta Merlin Dunia Textile*, Case No. 19-13214 (SHL) (Bankr. S.D.N.Y. February 4, 2020) [Dkt. No. 30]; *In re PT Bumi Resources Tbk*, Case No. 17-10115 (MKV) (Bankr. S.D.N.Y. March 17, 2017) [Dkt. No. 17]; *In re PT Berlian Laju Tanker Tbk*, Case No. 13-10901 (SMB) (Bankr. S.D.N.Y. January 8, 2015) [Dkt. No. 43]; *In re PT Arpeni Pratama Ocean Line Tbk*, Case No. 11-15691 (ALG) (Bankr. S.D.N.Y. January 12, 2012) [Dkt. No. 27].

71. Accordingly, the Foreign Representative respectfully requests that the Court finds that each PKPU Proceeding constitutes a "foreign proceeding."

**B.      The PKPU Proceedings are "Foreign Main Proceedings"**

72. The PKPU Proceedings each qualify as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." *See* 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding that is subject to the petition "is pending in the country where the debtor has the center of its main interests"). The relevant time period to determine the location of a debtor's "center of main interests" ("***COMI***") is the date on which the Chapter 15 petition is filed. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

24

73.     While the Bankruptcy Code does not expressly define COMI, it provides that, in the absence of evidence to the contrary, a foreign debtor's registered office is presumed to be its COMI.  *See* 11 U.S.C. § 1516(c); *see also In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012); *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) ("In effect, the registered office . . . is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interest.'").

74.     As set forth above and in the Simms Declaration, Indonesia is the center of the Indonesia Foreign Debtors' main interests.  Each of the Indonesia Foreign Debtors is incorporated under Indonesian law and has its registered office in Indonesia.   Simms Declaration ¶ 43.  Consequently, each of the Indonesia Foreign Debtors is entitled to the statutory presumption that its COMI is located in Indonesia.  The Indonesia Foreign Debtors' headquarters is located in Indonesia, and each member of the board of directors and board of commissioners of each member of the Indonesia Foreign Debtors resides in Indonesia.   All of the manufacturing activities conducted by the Indonesia Foreign Debtors occur in Indonesia and a substantial majority of the creditors of each of the Indonesia Foreign Debtors are located in Indonesia.   All material assets and operations of each of the Indonesia Foreign Debtors are located and occur in Indonesia.  Accordingly, as the PKPU Proceedings are pending in the COMI of each of the Indonesia Foreign Debtors, the PKPU Proceedings should be recognized as a foreign main proceeding.

## V.     The Foreign Representative Satisfies the Requirements of a "Foreign Representative" Under Section 101(24) of the Bankruptcy Code

75.     For recognition under Chapter 15, a foreign proceeding must also have a foreign representative.  *See* 11 U.S.C. § 1517(a)(2).  The Foreign Representative submits that each Chapter 15 Case for each Indonesia Foreign Debtor was commenced by an authorized "foreign

representative" of each Indonesia Foreign Debtor within the meaning of section 101(24) of the

Bankruptcy Code. Section 101(24) of the Bankruptcy Code provides as follows:

> The term "foreign representative" means a person or body, including
> a person or body appointed on an interim basis, authorized in a
> foreign proceeding to administer the reorganization or the
> liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding.

11 U.S.C. § 101(24).

76.     The respective board of commissioners and board of directors of each of the

Indonesia Foreign Debtors appointed Mr. Geoffrey David Simms, the chief executive officer and

partner of PT AJCapital Advisory (the firm that was appointed by the Sritex Group to assess its

financial position and reorganization of its business), as the Foreign Representative for each of the

members of the Indonesia Foreign Debtors in connection with their Chapter 15 Cases and directed

Mr. Simms to commence a Chapter 15 case for each of the Indonesia Foreign Debtors upon entry

of the PKPU Order.   Simms Declaration ¶ 37.   Copies of the resolutions of the board of

commissioners and board of directors are attached to the Petitions.

77.     Additionally, pursuant to a power of attorney, each member of the Indonesia

Foreign Debtors, among other things, formally appointed Mr. Simms as the Foreign Representative

in their Chapter 15 Cases.  *Id.* ¶ 38.

78.     The authority given to Mr. Simms by each of the Indonesia Foreign Debtors to act

as its Foreign Representative in these Chapter 15 Cases has been acknowledged and approved by

the independent administrators in the PKPU Proceedings.  Wijaya Declaration ¶ 39.  A copy of the

applicable power of attorney and approval by the independent administrators is attached to each

Indonesia Foreign Debtor's Petition.

79.     Accordingly, the Foreign Representative respectfully submits that Mr. Simms is an

authorized foreign representative for all of the Indonesia Foreign Debtors.

VI.    **The Petition Was Properly Filed and Satisfied the Requirements of Section
1515 of the Bankruptcy Code**

80.    The Foreign Representative properly commenced each Chapter 15 Case in accordance with sections 1504 and 1509 of the Bankruptcy Code, which require the filing of a petition for recognition under section 1515 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1504, 1509(a).  In accordance with section 1515(b)(1) and (d) of the Bankruptcy Code, attached to the Petitions is a certified copy of the English translation of the applicable PKPU Orders.   In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative also submitted a declaration attached to the Petition for each Indonesia Foreign Debtor confirming that there is no other "foreign proceeding" with respect to the Indonesia Foreign Debtors other than the PKPU Proceedings.[5]  Accordingly, the requirements of section 1515 of the Bankruptcy Code have been satisfied.   Additionally, attached to the Petitions is (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1, and (b) a list of foreign persons or bodies authorized to administer foreign proceedings of the Indonesia Foreign Debtors pursuant to Bankruptcy Rule 1007(a)(4).

VII.   **The Foreign Representative Should be Entrusted With the Administration of
the Indonesia Foreign Debtors' Assets in the United States on a Final Basis**

81.    Pursuant to section 1521(a)(5), this Court should entrust the administration or realization of all of the Indonesia Foreign Debtors' assets within the territorial jurisdiction of the United States on a final basis.

---

[5] Although there are no other foreign proceedings with respect to the Indonesia Foreign Debtors, the Singapore Foreign Debtors have commenced foreign proceedings in the General Division of the High Court of the Republic of Singapore, pursuant to Section 64 of the Insolvency, Restructuring and Dissolution Act (No. 40 of 2018) and have also filed for relief under Chapter 15 of the Bankruptcy Code. *See Declaration of Chua Sui Tong in Support of the Verified Chapter 15 Petition of Singapore Foreign Debtors and Motion for Provisional Relief*, filed contemporaneously herewith.  The Indonesia Foreign Debtors and the Singapore Foreign Debtors are seeking to have their Chapter 15 cases jointly administered for procedural purposes as they are all part of the Sritex Group.

82.     Upon recognition of the PKPU Proceedings, the Court may entrust assets to the foreign representative or another person.  *See* 11 U.S.C. § 1521(a)(5).  Further, upon recognition, unless the Court orders otherwise, the Foreign Representative is automatically empowered to operate the Indonesia Foreign Debtors' "business and exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552."  11 U.S.C. § 1520(a)(3).  This relief is critical to ensure the fair, efficient and centralized administration of the Indonesia Foreign Debtors' estates.  Therefore, the Foreign Representative respectfully requests that he be (a) entrusted with the administration of all of the Indonesia Foreign Debtors' assets located in the United States and (b) established as the exclusive authority to administer the Indonesia Foreign Debtors' assets and affairs in the United States on a final basis.

## NOTICE

83.     Notice of this Verified Petition has been provided to: (a) the Office of the United States Trustee, (b) the Indonesia Foreign Debtors, (c) the parties authorized to administer the PKPU Proceedings as set forth in the Petitions, (d) all parties to any litigation in which any of the Indonesia Foreign Debtors is a party and that is pending in the United States as of the commencement of these Chapter 15 Cases, and (e) all known parties against whom provisional relief is sought as set forth in the statements of Foreign Representative required by Federal Rule of Bankruptcy Procedure 1007(a)(4)(B), attached to the Petitions.  The Foreign Representative submits that no other or further notice of this Petition is necessary or required.

## NO PRIOR REQUEST

84.     No prior request for the relief sought in this Petition has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of an order,

substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and such

other and further relief as is just and proper.

Dated: New York, New York
       June 7, 2021

                                        Respectfully submitted,

                                        **GIBSON, DUNN & CRUTCHER LLP**

                                        /s/ *Matthew J. Williams*
                                        Matthew J. Williams
                                        John Conte
                                        200 Park Avenue
                                        New York, NY 10166
                                        (212) 351-4000 (Tel)
                                        (212) 351-4035 (Fax)

                                        *Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                    Chapter 15

PT SRI REJEKI ISMAN TBK, *et al.*,[1]          Case No. 21-_____

        Debtors in a Foreign Proceeding.       (Joint Administration Requested)

<u>**STATEMENT OF VERIFICATION**</u>

    Pursuant to 28 U.S.C. § 1746, Geoffrey David Simms hereby declares as follows under

penalty of perjury under the laws of the United States of America as follows:

    1.    I am the authorized foreign representative of each of the Indonesia Foreign Debtors

and I am authorized to file this Petition and to commence and act in these Chapter 15 Cases.

    2.    I have read the foregoing Petition and believe that the factual allegations contained

therein are true and accurate to the best of my knowledge, information and belief.

Executed on ___June 7___ 2021,
in Jakarta, Indonesia.

_____
Geoffrey David Simms
Foreign Representative

---

[1]  The Foreign Debtors in these chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia, (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, and (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PT SRI REJEKI ISMAN TBK, *et al.*,[1] | Case No. 21-_____ |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

### ORDER RECOGNIZING FOREIGN PROCEEDING
### FOR INDONESIA FOREIGN DEBTORS

Upon the *Verified Petition of Indonesia Foreign Debtors Under Chapter 15 for Recognition of a Foreign Main Proceeding* (the "***Verified Petition***" and, together with the Chapter 15 Petition for Recognition of a Foreign Proceeding (Official Form 401) filed immediately prior hereto for each Indonesia Foreign Debtor, the "***Petitions***")[2] of Geoffrey David Simms, in his capacity as the duly authorized foreign representative (the "***Foreign Representative***") of each of the Indonesia Foreign Debtors, in support of entry of an order pursuant to sections 1517(a) and 1521(a)(6) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "***Bankruptcy Code***") (a) finding that (i) each Indonesia Foreign Debtor is eligible to be a "debtor" under Chapter 15 of the Bankruptcy Code, (ii) the PKPU Proceedings are "foreign main proceedings" within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the

---

[1]  The Foreign Debtors in these chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia, (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

[2]  Capitalized terms used herein but not otherwise defined shall have the respective meanings ascribed to such terms in the Verified Petition.

requirements of a "foreign representative" of each Indonesia Foreign Debtor under section 101(24) of the Bankruptcy Code, and (iv) each of the Petitions was properly filed and meets the requirements of section 1515 of the Bankruptcy Code, (b) granting recognition of the PKPU Proceedings as foreign main proceedings under section 1517 of the Bankruptcy Code and granted the relief under section 1520 of the Bankruptcy Code; and upon the hearing (the "***Hearing***") on the Petitions and this Court's review and consideration of the Petitions, the Simms Declaration and the Wijaya Declaration; and appropriate and timely notice of the filing of the Petitions and the Hearing having been given; and no other or further notice being necessary or required; and the Court having determined that the legal and factual bases set forth in the Petitions and all other pleadings and proceedings in this case establish just cause to grant the relief ordered herein, and after due deliberation therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction to consider the Petitions and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated as of January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).

B.      The consideration of the Petitions and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

C.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

---

[3]  The findings and conclusions set forth herein and on the record of the Hearing to consider the Petitions constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

D.      Good, sufficient, appropriate, and timely notice of the filing of the Petitions and the

Hearing has been given by the Foreign Representative, pursuant to Bankruptcy Rules 1011(b) and

2002(q) and the *Order Scheduling a Hearing on Chapter 15 Petition for Recognition and*

*Specifying the Form and Manner of Service of Notice* [Dkt. No. ___] to: (a) the United States

Trustee for the Southern District of New York, (b) the Indonesia Foreign Debtors, (c) the parties

authorized to administer the PKPU Proceedings as set forth in the Petition, (d) all parties to any

litigation in which any of the Indonesia Foreign Debtors is a party and that is pending in the United

States as of the commencement of these Chapter 15 Cases, (e) all known parties against whom

provisional relief is sought as set forth in the statements of Foreign Representative required by

Federal Rule of Bankruptcy Procedure 1007(a)(4)(B), attached to the Petitions, and (f) all parties

that have filed a notice of appearance in these Chapter 15 Cases. In light of the nature of the relief

requested and prior orders of this Court, no other or further notice is required.

E.      No objections or responses were filed that have not been overruled, withdrawn, or

otherwise resolved.

F.      Each Indonesia Foreign Debtor is "eligible" to be a debtor in the Chapter 15 Case

pursuant to sections 109 and 1501 of the Bankruptcy Code.

G.      The PKPU Proceedings are "foreign proceedings" as such term is defined in section

101(23) of the Bankruptcy Code.

H.      The PKPU Proceedings are pending in the Republic Indonesia, which is where each

Indonesia Foreign Debtor has its "center of main interests" as referred to in section 1517(b)(1) of

the Bankruptcy Code.  As such, the PKPU Proceedings are "foreign main proceedings" pursuant

to section 1502(4) of the Bankruptcy Code and are entitled to recognition as foreign main

proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code.

I.      The Foreign Representative is a "person" as such term is defined in section 101(41) of the Bankruptcy Code and has been appointed and designated as the "foreign representative" of each Indonesia Foreign Debtor as such term is defined in section 101(24) of the Bankruptcy Code.

J.      These Chapter 15 Cases were properly commenced pursuant to sections 1504 and 1509, and each of the Petitions satisfies the requirements of section 1515 of the Bankruptcy Code and Rule 2002(q) of the Federal Rules of Bankruptcy Procedure.

K.      The relief sought by the Petitions will not cause undue hardship or inconvenience to any party in interest and, to the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Indonesia Foreign Debtors, their estates and all of their creditors.

L.      The relief granted hereby is necessary to effectuate the purposes and objections of Chapter 15 and to protect the Indonesia Foreign Debtors and the interests of their creditors and other parties in interest.

M.      Appropriate notice of the filing of, and the Hearing on, the Petitions was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

N.      The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to section 1507, 1517, 1520, and 1521 of the Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:**

1.      The Petitions and the relief requested in this Order are granted as set forth herein, and any objections or responses thereto that have not been withdrawn or resolved are overruled with prejudice.

2.     The PKPU Proceedings are recognized as "foreign main proceedings" pursuant to sections 1517(a) and 1517(b)(1) of the Bankruptcy Code.

3.     All relief and protections afforded foreign main proceedings under section 1520 of the Bankruptcy Code are hereby granted to the PKPU Proceedings, each Indonesia Foreign Debtor and each Indonesia Foreign Debtor's assets located in the United States, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to each Indonesia Foreign Debtor and its property within the territorial jurisdiction of the United States.

4.     All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and his authorized representatives and agents, are hereby enjoined from:

a.     execution against any Indonesia Foreign Debtors' assets;

b.     the commencement or continuation, including the issuance or employment of process, of a judicial, quasi-judicial, administrative, regulatory, arbitral, bankruptcy, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against any Indonesia Foreign Debtor, which in either case in any way relates to, or would interfere with, the administration of any Indonesia Foreign Debtors' estate in the PKPU Proceeding;

c.     the enforcement of a judgment against any Indonesia Foreign Debtor or against property of any Indonesia Foreign Debtor;

d.     any act to obtain possession of property of any Indonesia Foreign Debtor's estate or of property from any Indonesia Foreign Debtor's estate or to exercise control over property of any Indonesia Foreign Debtor's estate;

e.     any act to create, perfect, or enforce any lien against property of any Indonesia Foreign Debtor's estate;

f.     any act to collect, assess, or recover a claim against any Indonesia Foreign Debtor; and

5

g.    transferring, relinquishing or disposing of any property of any Indonesia Foreign Debtor to any entity other than the Foreign Representative and his authorized representatives and agents;

*provided*, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States.

5.    Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to the Indonesia Foreign Debtors by this Court pursuant to section 1519(a) of the Bankruptcy Code shall be extended and any order granting provisional relief shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

6.    The Foreign Representative is recognized as the "foreign representative" of each Indonesia Foreign Debtor as defined in section 101(24) of the Bankruptcy Code in respect of the PKPU Proceedings.

7.    The Foreign Representative is entrusted with the administration and realization of all of the Indonesia Foreign Debtors' assets located in the United States and is established as the exclusive authority to administer the Indonesia Foreign Debtors' assets and affairs in the United States.

8.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

9.    No action taken by the Foreign Representative in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the PKPU Proceedings, the documents contemplated thereunder, this Order, the Chapter 15 Cases, any further order for additional relief in the Chapter 15 Cases, or any adversary proceedings in connection therewith, will be deemed to constitute a waiver of the immunity afforded the Foreign Representative in its capacity as such under sections 306 or 1510 of the Bankruptcy Code.

10.    The Foreign Representative, the Indonesia Foreign Debtors, and each of their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

11.    Notwithstanding Bankruptcy Rule 7062, made applicable to these Chapter 15 Cases by Bankruptcy Rule 1018, this Order shall be immediately effective and enforceable upon its entry.

12.    This Court shall retain jurisdiction with respect to:  (i) the enforcement, amendment or modification of this Order; (ii) any requests for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases; and (iii) any request by an entity for relief from the provisions of this Order, for cause shown as to any of the foregoing and provided that the same is properly commenced and within the jurisdiction of this Court.


Dated: New York, New York
        _____, 2021


_____
UNITED STATES BANKRUPTCY JUDGE