**GIBSON, DUNN & CRUTCHER LLP**
Matthew J. Williams
John Conte
200 Park Avenue
New York, NY 10166
(212) 351-4000 (Tel)
(212) 351-4035 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PT SRI REJEKI ISMAN TBK, *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 21-_____<br><br>(Joint Administration Requested) |

**DECLARATION OF FOREIGN REPRESENTATIVE
IN SUPPORT OF THE VERIFIED CHAPTER 15 PETITION OF
THE INDONESIA FOREIGN DEBTORS AND MOTION FOR PROVISIONAL RELIEF**

Geoffrey David Simms, hereby declares as follows:

1.  I submit this declaration (this "***Declaration***") in support of (a) the *Verified Petition of Indonesia Foreign Debtors Under Chapter 15 for Recognition of a Foreign Main Proceeding* (the "***Verified Petition***") and (b) the *Emergency Motion for Provisional Relief* (the "***Provisional Relief Motion***")[2] each filed contemporaneously herewith by me in my capacity as the duly authorized foreign representative (the "***Foreign Representative***") of PT Sri Rejeki Isman Tbk

---

[1] The Foreign Debtors in these Chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition or the Provisional Relief Motion, as applicable.

("*Sritex*"), PT Bitratex Industries ("*BIS*"), PT Sinar Pantja Djaja ("*SPD*"), and PT Primayudha Mandirijaya ("*PMJ*") (collectively, the "*Indonesia Foreign Debtors*") in connection with their foreign proceedings (collectively, the "*PKPU Proceedings*") pending in the Commercial Court of the District Court of Semarang (the "*Indonesian Court*"), pursuant to Indonesian Insolvency Law (as defined in the Verified Petition).

2. I am the chief executive officer and partner of PT AJCapital Advisory ("*AJCapital*"), a corporate advisory firm that was appointed by the Indonesia Foreign Debtors to assist them in assessing its financial position and the reorganization of its business.

3. I received a Bachelor of Commerce degree from the University of British Columbia in 1982, majoring in accounting and financial information systems. In 2004 I received a Master of Business Administration jointly issued by the Kellogg School of Management and the Hong Kong University of Science and Technology. Additionally, I have received the following professional designations: (1) Chartered Accountant (Canada); (2) Chartered Financial Analyst (CFA Institute); and (3) Fellow INSOL International. Over the past 35 years I have practiced as an auditor (external and internal), financial advisor, and insolvency practitioner. I am a founding partner of the financial advisory firm AJCapital, and I am very experienced in the areas of financial analysis, capital structuring, fund raising, and debt restructuring. I have taught various in-house accounting and finance training courses for multinational consultancy firms, and have provided debt restructuring training course for domestic banks. I have also presented in domestic and international seminars on Indonesian debt, restructurings. Over the course of my career I have participated in various debt restructurings in Indonesia, both voluntary and court supervised, having represented clients in successful debt restructurings totaling more than $10 billion.

4.      I have intimate knowledge about the Indonesia Foreign Debtors' financial position, business and reorganization plans.

5.      Each of the facts set forth below is true to the best of my knowledge, information and/or belief.

### A.     Overview of the Indonesia Foreign Debtors' Businesses

6.      The Indonesia Foreign Debtors consist of Sritex, a public company listed on the Indonesia Stock Exchange, and its subsidiaries, BIS, SPD, and PMJ. Each of the Indonesia Foreign Debtors is incorporated under the laws of Indonesia with registered offices in Indonesia. The registered address of the headquarter of the Indonesia Foreign Debtors is Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia. The board of directors and board of commissioners of each of the Indonesia Foreign Debtors are comprised of Indonesia residents.

7.      The Indonesia Foreign Debtors are part of a group of companies (the "*Sritex Group*"), comprised of: (a) the Indonesia Foreign Debtors, and (b) Golden Legacy Pte Ltd ("*Golden Legacy*") and Golden Mountain Textile and Trading Pte Ltd ("*Golden Mountain*" and together with Golden Legacy, the "*Singapore Foreign Debtors*"), which are companies incorporated under the laws of Singapore. Golden Legacy and Golden Mountain have, concurrently with the Indonesia Foreign Debtors, commenced Chapter 15 cases for recognition of the parallel restructuring proceedings in Singapore. The corporate structure of the Sritex Group is set forth in the diagram below.

3



8.  The Sritex Group is one of the largest vertically integrated textile manufacturers in Southeast Asia. The Sritex Group produces a variety of midstream and downstream products, including yarn, greige (or raw fabric), finished fabric and apparel, including uniforms and retail clothing. It sells its products domestically in Indonesia and internationally in over 50 countries and its customers have included some of the world's largest downstream textile manufacturers in India and China, as well as major global retailers and corporations. The Sritex Group is also one of only a few suppliers outside Europe certified to produce military uniforms to Germany. Since its inception, the Sritex Group's military uniforms have been sold to 30 countries, including Germany, Austria, the United Kingdom, Australia, the United Arab Emirates, Malaysia and Indonesia.

9.  The Indonesia Foreign Debtors are the primary operating companies within the Sritex Group and their production facilities are all located in Central Java, Indonesia.

10. Sritex's production facilities are located on approximately 61 hectares of land in Sukoharjo.

11. BIS' production facilities are located on approximately 24 hectares of land in Semarang, approximately 117 kilometers from Sritex's production facilities.

12. SPD's production facilities which produce yarn are located on approximately 18 hectares of land in Semarang, approximately 120 kilometers from Sritex's production facilities.

4

13. PMJ's production facilities are located on approximately 22 hectares of land in Boyolali, approximately 60 kilometers from Sritex's production facilities.

14. The Indonesia Foreign Debtors do not have operations or material assets outside of Indonesia.

15. The domestic Indonesian market is by far the largest market for the Sritex Group (and in particular the Indonesia Foreign Debtors). For the financial year ended December 31, 2020, domestic sales represent 40.56% of its total sales by value. Set out below is a summary breakdown of the sales of the Sritex Group for the financial year ended December 31, 2020.

|  | Sales (US$) |
|---|---|
| Domestic | 520,196,722 |
| International |  |
| Asia | 448,738,711 |
| Europe | 113,976,946 |
| United States and South America | 119,132,694 |
| United Arab Emirates and Africa | 78,523,067 |
| Australia | 2,001,244 |
| <u>Net Sales</u> | <u>1,282,569,384</u> |

**B.    Overview of the Indonesia Foreign Debtors' Capital Structure**

16. The Indonesia Foreign Debtors have a complex debt structure in light of the manner in which they have financed their business and operations, characterized by the following:

(a) There are four (4) main classes of financial indebtedness: (i) notes, (ii) syndicated term loans, (iii) bilateral term and working capital loans, and (iv) lease financings. The Indonesia Foreign Debtors' financial indebtedness is primarily denominated in Indonesian Rupiahs ("*IDR*") and U.S. Dollars ("*US$*").

5

(b) All of the Indonesia Foreign Debtors' financial indebtedness is governed by Indonesian law with the exception of: (i) two series of notes issued pursuant to indentures governed by New York law, (ii) a syndicated term loan facility governed by Singapore law, (iii) a bilateral term loan facility governed by Singapore law, and (iv) a bilateral loan facility from Citibank, N.A. ("*Citibank*") governed by New York law.

17. The table below sets out an overview of the financial indebtedness of the Indonesia Foreign Debtors as of December 31, 2020.

| (In Millions (US$))[3] | Indonesia Domiciled Lenders | Foreign Domiciled Lenders | Total |
|---|---|---|---|
| Notes | 25 | 375 | 400 |
| Syndicated Term Loans | 121 | 229 | 350 |
| Bilateral Term and Working Capital Loans | 189 | 93 | 282 |
| Lease Financings | 24 | - | 24 |
| **Total** | **359** | **697** | **1,056** |

*Notes*

18. Sritex is the issuer of 5.8% medium term notes due 2021 pursuant to an indenture governed by Indonesia law (the "*Domestic Notes*"). The Domestic Notes are not guaranteed by any of the other Foreign Debtors. As of December 31, 2020, the outstanding amount under the Domestic Notes was US$25,000,000. The Domestic Notes are listed on the Indonesia Stock Exchange.

19. Sritex is also the issuer of 7.25% senior notes due 2025 (the "*2025 Notes*") pursuant to a New York law governed indenture, dated as of October 16, 2019, by and among Sritex, as issuer, Citicorp Investment Bank (Singapore) Limited ("*Citicorp*"), as trustee, and BIS, SPD and PMJ, as guarantors (the "*2025 Indenture*"). As of December 31, 2020, the outstanding amount under the 2025 Notes was US$225,000,000. The 2025 Notes are listed on the Singapore Stock Exchange. Each of the Indonesia Foreign Debtors are obligors of the 2025 Notes.

---

[3] The figures in the table consist of indebtedness denominated in U.S. Dollars, as well as indebtedness denominated in Indonesian Rupiahs that have been converted to U.S. Dollars at a foreign exchange rate of 14,105 Indonesian Rupiah to 1 U.S. Dollar.

6

20.     Additionally, Sritex and SPD are guarantors of US$150,000,000 6.875% senior notes due 2024 (the "*2024 Notes*," and together with the 2025 Notes, the "*Notes*") issued by Golden Legacy, a Singapore Foreign Debtor.  The 2024 Notes were issued pursuant to a New York law governed indenture, dated as of March 27, 2017, by and among Golden Legacy, as issuer, Citicorp, as trustee, and Sritex and SPD, as guarantors, (the "*2024 Indenture*" and together with the 2025 Indenture, the "*Indentures*") and are listed on the Singapore Stock Exchange.  The 2024 Notes are secured by the capital stock of Golden Legacy and Golden Mountain.

*Syndicated Term Loan Facility*

21.     All of the Indonesia Foreign Debtors are obligors under a Singapore law governed syndicated term loan facility (the "***Syndicated Loan Facility***") pursuant to a Syndicated Facilities Agreement, dated March 20, 2019.  As of December 30, 2020, the outstanding amount under the Syndicated Loan Facility was US$350,000,000, of which US$121,000,000 was owed to 9 lenders domiciled in Indonesia (each, an "***Indonesia Domiciled Lender***") and US$229,000,000 was owed to 20 foreign lenders with domiciles outside of Indonesia (each, a "***Foreign Domiciled Lender***").  The final maturity date of the Syndicated Facility is 2 January 2022.

*Bilateral Term and Working Capital Loans*

22.     As of December 31, 2020, Sritex had US$230,007,255 in bilateral term loans and working capital loans outstanding, consisting of (i) US$139,192,163 in indebtedness from nine (9) Indonesia Domiciled Lenders, and (ii) US$90,815,092 in indebtedness from five (5) Foreign Domiciled Lenders.  Additionally, pursuant to a letter sent by Citibank on April 5, 2021, IDR 107,027,500,000 (approximately US$7,587,912) in principal amount of debt was due to it under, among others, a New York law governed Master Credit Facility Agreement, dated as of December 19, 2016, by and between Sritex, as borrower, and Citibank (the "***New York Credit Facility***").

7

23. As of December 31, 2020, BIS had US$25,858,004 in bilateral and working capital loans outstanding, consisting of US$23,360,778 in indebtedness from three (3) Indonesia Domiciled Lender, and US$2,497,226 in indebtedness from one (1) Foreign Domiciled Lender.

24. As of December 31, 2020, PMJ had US$15,599,975 in bilateral and working capital loans outstanding, consisting of US$15,599,975 in indebtedness from three (3) Indonesia Domiciled Lenders.

25. As of December 31, 2020, SPD had US$10,401,658 in bilateral and working capital loans outstanding, consisting of US$10,401,658 in indebtedness from one (1) Indonesia Domiciled Lender.

*Lease Financings*

26. As of December 31, 2020, Sritex had US$22,874,564 in outstanding indebtedness under lease financings, consisting of US$22,874,564 in indebtedness from six (6) Indonesia Domiciled Lenders.

27. As of December 31, 2020, SPD had US$782,746 in outstanding indebtedness under lease financings, consisting of US$782,746 in indebtedness from two (2) Indonesia Domiciled Lenders.

28. As of December 31, 2020, BIS had US$10,291 in outstanding indebtedness under lease financings, consisting of US$10,291 in indebtedness from one (1) Indonesia Domiciled Lender.

**C.    COVID-19 Pandemic and the Change of Sentiment towards the Textile Industry**

29. The COVID-19 pandemic presents an unprecedented challenge to textile manufacturers, including the Sritex Group, due to the vulnerability of garment supply chains to external demand and supply shocks and the fragile structural dynamic of the industry.

8

Additionally, as a result of the COVID-19 pandemic, textile manufacturers have been and continue to be impacted by an increase in cash-to-cycle conversion which has a significant impact on the business and operations. In fact, a recent study carried out by the International Labour Office shows that the garment industry has been disproportionately hit by the COVID-19 with lockdowns and uncertainty led to a decrease of 60% to 70% in apparel sales from April to May 2020.

30. The COVID-19 pandemic also presents a significant operational challenge to the Sritex Group. The Sritex Group employs approximately 17,186 employees in its various production facilities and, during the COVID-19 pandemic, the Sritex Group has prioritized the health and safety of its employees. The Sritex Group recognizes and supports the Indonesian Government's efforts to combat the spread of the COVID-19 pandemic and has accordingly made valiant efforts to ensure the safety of its employees. The operational challenges led to increased pressure on the Sritex Group to maintain a sufficient workforce to meet production requirements.

31. And while the Sritex Group has managed to operate during the COVID-19 pandemic, its financial health has deteriorated in the recent months as a result of the abrupt change of sentiment towards the textile industry. This has led to a series of credit rating downgrades.

32. The credit rating downgrades began on December 18, 2020 when Fitch Ratings revised the Sritex Group's outlook to negative at 'BB-' . Fitch Ratings subsequently downgraded the Sritex Group's credit rating to 'B-' on March 25, 2021 and 'CCC-' on April 7, 2021. Similarly, Moody's Investors Service downgraded the Sritex Group's corporate family rating to 'B1' on December 23, 2020, 'B3' on March 22, 2021 and 'Ca' on April 9, 2021.

33. The abrupt change of sentiment towards the textile industry and the subsequent credit rating downgrades (all of which were beyond the Sritex Group's control) caught the Sritex Group by surprise and derailed its liability management efforts. The Sritex Group's planned

issuance of up to US$325,000,000 in notes to refinance its short-term liabilities could not be completed as the notes issuance had to be postponed due to the unfavorable market conditions caused by COVID-19. In addition, the Sritex Group faced an unprecedented challenge in obtaining consent from its syndicated lenders to an extension of the maturity of the Syndicated Loan Facility, and it was reported that the credit rating downgrades led to the banks' risk committees re-reviewing the Sritex Group's financials and subjecting them to more stress tests with new assumptions. Moreover, the Sritex Group's efforts to refinance the Syndicated Loan Facility were derailed, as Bank Central Asia and Bank Negara Indonesia, both of whom were previously in discussions with the Sritex Group regarding the refinancing of the Syndicated Loan Facility, began reconsidering the potential refinancing as a result of the credit rating downgrades. Lastly, the Sritex Group's trade facilities were frozen and the Sritex Group started receiving demand letters from its creditors.

        **D.**    **Consensual Restructuring Process**

    34.    Not surprisingly, the resulting financial challenges culminated in a liquidity crisis. Accordingly, on or around March 2021, the Sritex Group engaged Helios Capital and Assegaf Hamzah and Partners to pursue a potential restructuring process and issued a press release in relation thereto. On April 19, 2021, the PKPU Proceedings were commenced against the Indonesia Foreign Debtors by a trade creditor, CV Prima Karya ("***Prima Karya***"), details of which are set out below.

        **E.**    **The Indonesia Foreign Debtors PKPU Proceedings**

    35.    On April 19, 2021, Prima Karya filed an involuntary application (the "***PKPU Application***") to commence a PKPU proceeding against the Indonesia Foreign Debtors.

    36.    Sritex owes approximately US$375,000 to Prima Karya pursuant to a construction contract entered in 2020 (the "***Prima Karya Debt***"). Each other Indonesia Foreign Debtor guaranteed the Prima Karya Debt.

10

### F. Appointment as Foreign Representative

37. The board of commissioners and board of directors of each of the members of the Indonesia Foreign Debtors appointed me as the Foreign Representative for each of the Indonesia Foreign Debtors in connection with their Chapter 15 Cases and directed me to commence a Chapter 15 case for each of the Indonesia Foreign Debtors upon entry of the PKPU Order.

38. Pursuant to a power of attorney, each of the Indonesia Foreign Debtors, among other things, formally appointed me as the Foreign Representative in their Chapter 15 Cases.

39. The authority given to me by each of the Indonesia Foreign Debtors to act as their Foreign Representative in these Chapter 15 Cases is acknowledged and approved by the administrators of the Indonesia Foreign Debtors in the PKPU Proceedings.

### G. The Chapter 15 Cases

40. On the date hereof, I caused an Official Form 410 (Chapter 15 Petition for Recognition of a Foreign Proceeding) to be filed on behalf of each of the Indonesia Foreign Debtors commencing these chapter 15 cases.

### H. Other Relevant Facts Regarding the Indonesia Foreign Debtors

41. Each of the Indonesia Foreign Debtors has paid a retainer to its counsel. The retainers are each held in a bank account located in this District. Additionally, all of the Indonesia Foreign Debtors are parties to an indenture governed by New York law, as described below.

42. Each of the Indonesia Foreign Debtors is incorporated under Indonesian law and has its registered offices in Indonesia. The Indonesia Foreign Debtors' headquarters is located in Indonesia, and each member of the board of directors and board of commissioners of each member of the Indonesia Foreign Debtors resides in Indonesia. All of the manufacturing activities conducted by the Indonesia Foreign Debtors occur in Indonesia and a substantial majority of the

creditors of each of the Indonesia Foreign Debtors are located in Indonesia. All material assets and operations of each of the Indonesia Foreign Debtors are located and occur in Indonesia

43. Other than the PKPU Proceedings, there are no other pending debt adjustment or insolvency proceedings of any kind involving the Indonesia Foreign Debtors.

I. **Need for Provisional Relief**

44. The PKPU Order implemented a moratorium on creditor actions and during the PKPU Proceedings, all collection efforts against the debtor during are stayed and secured creditors are estopped from enforcing their security interests during the PKPU Proceeding. Accordingly, the Indonesia Foreign Debtors continue to operate in the ordinary course of business under the protection of that moratorium.

45. In the Provisional Relief Motion, I seek to have section 362 of title 11 of the U.S. Bankruptcy Code made applicable to the Indonesia Foreign Debtors' Chapter 15 Cases to preclude any parties from taking actions in the United States that would jeopardize the Indonesia Foreign Debtors' restructuring efforts in the PKPU Proceedings.

46. I believe that this relief is critical to the success of the PKPU Proceedings because any lawsuit in the United States against any of the Indonesia Foreign Debtors could significantly impede the Indonesia Foreign Debtors' ability to implement their restructuring in Indonesia by draining the Indonesia Foreign Debtors' limited resources and diverting the attention of management. These problems would only be exacerbated, and the Indonesia Foreign Debtors' restructuring further threatened, if the Indonesia Foreign Debtors were required to engage in expensive and time-consuming litigation around the globe.

47. If the Indonesia Foreign Debtors' restructuring efforts fail due to potential lawsuits instituted in New York, then the Indonesia Foreign Debtors could potentially be forced into liquidation, to the detriment of all of their creditors and stakeholders.

Pursuant to 28 U.S.C, § 1746, 1 hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on \_\_\_\_June 7\_\_\_\_, 2021.
in the Republic of Indonesia.

Geoffrey David Simms
Foreign Representative