**GIBSON, DUNN & CRUTCHER LLP**
Matthew J. Williams
John Conte
200 Park Avenue
New York, NY 10166
(212) 351-4000 (Tel)
(212) 351-4035 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 15 |
| PT SRI REJEKI ISMAN TBK, *et al.*,[1] | Case No. 21-_____ |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## VERIFIED PETITION OF SINGAPORE FOREIGN DEBTORS
## UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING

Geoffrey David Simms in his capacity as the authorized foreign representative (the "***Foreign Representative***") of Golden Legacy Pte Ltd ("***Golden Legacy***") and Golden Mountain Textile and Trading Pte Ltd ("***Golden Mountain***," together with Golden Legacy, the "***Singapore Foreign Debtors***") in connection with their foreign proceedings (collectively, the "***Singapore Proceedings***") pending in the General Division of the High Court of the Republic of Singapore (the "***Singapore Court***"), pursuant to Section 64 of the Insolvency, Restructuring and Dissolution Act (No. 40 of 2018), by and through his undersigned counsel, respectfully submits

---

[1] The Foreign Debtors in these chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia, (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

this verified petition (together with the *Chapter 15 Petition for Recognition of a Foreign Proceeding (Official Form 401)* filed immediately prior hereto for each Singapore Foreign Debtor, the "**Petitions**") in support of entry of an order pursuant to section 1517(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") (a) finding that (i) the Singapore Foreign Debtors are each eligible to be a "debtor" under Chapter 15 of the Bankruptcy Code, (ii) each Singapore Proceeding is the "foreign main proceeding" for each Singapore Foreign Debtor within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code, and (iv) the Petitions for each Singapore Foreign Debtor were properly filed and meets the requirements of section 1515 of the Bankruptcy Code, and (b) granting recognition of each Singapore Proceeding as a foreign main proceeding under sections 1517, 1520 and 1521 of the Bankruptcy Code.

In support of the Petitions, the Foreign Representative submits the (a) *Declaration of Foreign Representative in Support of Verified Chapter 15 Petition of Singapore Foreign Debtors and Motion for Provisional Relief* (the "**Simms Declaration**") and (b) *Declaration of Chua Sui Tong in Support of the Verified Chapter 15 Petition of Singapore Foreign Debtors and Motion for Provisional Relief* (the "**Chua Declaration**"), each of which has been filed contemporaneously herewith and is incorporated herein by reference as if fully set forth herein. In further support of the Petitions, the Foreign Representative respectfully states as follows:

## JURISDICTION AND VENUE

1.    The Singapore Foreign Debtors' cases have been properly commenced pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code by the filing of the Petitions seeking recognition of the Singapore Proceedings as foreign main proceedings under section 1515 of the

2

Bankruptcy Code.   Contemporaneously herewith, the Indonesia Foreign Debtors (as defined herein, and collectively with the Singapore Foreign Debtors, the "***Foreign Debtors***"), which are affiliates of the Singapore Foreign Debtors, have also commenced cases under Chapter 15 of the Bankruptcy Code seeking, *inter alia*, recognition of their foreign proceedings pending in the Commercial Court of the District Court of Semarang in Indonesia.   The Singapore Foreign Debtors and the Indonesia Foreign Debtors have filed a motion requesting joint administration of their Chapter 15 cases for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference to Bankruptcy Judges of the District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Each of the Singapore Foreign Debtors has paid a retainer to Gibson, Dunn & Crutcher LLP ("***Gibson Dunn***").   Simms Declaration ¶ 26.   The retainers are each held in a bank account located in this District.   *Id.*   Additionally, Golden Legacy is party to the 2024 Indenture (as defined herein) governed by New York law, as described below.   *Id.* ¶ 9, 12.   Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1410(1).   This District will likely be convenient to any creditors who might seek to challenge the Foreign Representative's request for recognition of the Singapore Proceedings as foreign main proceedings in these Chapter 15 cases because of New York's centrality in international finance and commerce.   Moreover, venue in this District is consistent with the interests of justice and the convenience of the parties pursuant to 28 U.S.C. § 1410(3).

4.     The statutory bases for relief are sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

I.     **Overview of the Singapore Foreign Debtors**

    A.     **Overview of the Singapore Foreign Debtors' Businesses**

5.     The Singapore Foreign Debtors consist of Golden Legacy and Golden Mountain. Each Singapore Foreign Debtor is incorporated under the laws of Singapore with registered offices in Singapore. *Id.* ¶ 6.  The registered address of the headquarters of the Singapore Foreign Debtors is 120 Robinson Road, #08-01, Singapore 068913.  *Id.* ¶ 6.

6.     The Singapore Foreign Debtors are part of a group of companies (the "***Sritex Group***"), comprised of PT Sri Rejeki Isman Tbk ("***Sritex***") and its subsidiaries: (a) PT Bitratex Industries ("**BIS**"), (b) PT Sinar Pantja Djaja ("***SPD***"), (c) PT Primayudha Mandirijaya ("***PMJ***," and collectively with Sritex, BIS, and SPD, the "***Indonesia Foreign Debtors***"), (d) Golden Legacy, and (e) Golden Mountain.  Sritex, BIS, SPD and PMJ are all incorporated under the laws of Indonesia and, have commenced Chapter 15 cases for recognition of the parallel restructuring proceedings in Indonesia concurrently with the Singapore Foreign Debtors.  The corporate structure of the Sritex Group is set forth in the diagram below.  *Id.* ¶ 7.



7.      The Sritex Group is one of the largest vertically integrated textile manufacturers in Southeast Asia.  The Sritex Group produces a variety of midstream and downstream products, including yarn, greige (or raw fabric), finished fabric and apparel, including uniforms and retail clothing.  *Id.* ¶ 8.  It sells its products domestically in Indonesia and internationally in over 50 countries and its customers have included some of the world's largest downstream textile manufacturers in India and China, as well as major global retailers and corporations.  *Id.* ¶ 8.  The Sritex Group is also one of only a few suppliers outside Europe certified to produce military uniforms to Germany.  Since its inception, the Sritex Group's military uniforms have been sold to 30 countries, including Germany, Austria, the United Kingdom, Australia, the United Arab Emirates, Malaysia and Indonesia.  *Id.* ¶ 8.

8.      Golden Legacy is a vehicle through which the Sritex Group raised funds for and on behalf of the Sritex Group in Singapore through the issuance of the US$150,000,000 6.875% guaranteed senior notes due 2024 (the "***2024 Notes***") pursuant to a New York law governed indenture dated as of March 27, 2017 (the "***2024 Indenture***"), by and among Golden Legacy, as issuer, Citicorp Investment Bank (Singapore) Limited, as trustee and collateral agent, and Sritex and SPD, as guarantors.  The 2024 Notes are listed on the Singapore Stock Exchange.  The proceeds from the issuance of the 2024 Notes were used to redeem Golden Legacy's then outstanding US$350,000,000 8.25% senior notes due 2021 and to subscribe to additional shares in the capital of Golden Mountain who in turn on-lent the proceeds to other entities in the Sritex Group.  *Id*. ¶ 9.

9.      Golden Mountain is also a vehicle through which the Sritex Group raised funds in Singapore.  Golden Mountain received the proceeds of the 2024 Notes from Golden Legacy and

subsequently on-lent such proceeds to other entities in the Sritex Group. Golden Mountain also carries out textile trading activities in Singapore. *Id.* ¶ 10.

10.    Accordingly, the business and operations of the Singapore Foreign Debtors are all located in Singapore. The Singapore Foreign Debtors do not have operations or material assets outside of Singapore. *Id.* ¶ 11.

**B.    Overview of the Singapore Foreign Debtors' Capital Structure**

*Golden Legacy*

11.    Golden Legacy's financial indebtedness consists of the US$150,000,000 in 2024 Notes outstanding under the 2024 Indenture. The 2024 Notes are guaranteed by Sritex and SPD, which are Indonesia Foreign Debtors, and are secured by a Singapore law governed pledge over the shares of Golden Legacy and Golden Mountain. *Id.* ¶ 12.

*Golden Mountain*

12.    Golden Mountain's financial indebtedness consists of:

    a.    a Singapore law governed trade facility of up to US$30,000,000 from PT Bank Negara Indonesia (Persero) Tbk, Singapore Branch, which is secured by a letter of charge, set off and combination of accounts provided by Golden Mountain, in respect of which an amount of US$12,169,960 was outstanding as of December 31, 2020;

    b.    a Singapore law governed unsecured trade facility of up to US$10,000,000 unsecured from Emirates NBD Bank (P.J.S.C.), Singapore Branch, in respect of which an amount of US$2,634,797 was outstanding as of December 31, 2020; and

    c.    a Singapore law governed unsecured trade facility of up to US$20,000,000 from The Hongkong and Shanghai Banking Corporation Limited, in respect of which an amount of US$7,708,367 was outstanding as of December 31, 2020.

*Id.* ¶ 13.

## II.    COVID-19 Pandemic and the Change of Sentiment towards the Textile Industry

13.    The COVID-19 pandemic presents an unprecedented challenge to textile manufacturers, including the Sritex Group, due to the vulnerability of garment supply chains to external demand and supply shocks and the fragile structural dynamic of the industry. Additionally, as a result of the COVID-19 pandemic, textile manufacturers have been and continue to be impacted by an increase in cash-to-cycle conversion which has a significant impact on the business and operations.  In fact, a recent study carried out by the International Labour Office shows that the garment industry has been disproportionately hit by the COVID-19 with lockdowns and uncertainty led to a decrease of 60% to 70% in apparel sales from April to May 2020.  *Id.* ¶ 14.[2]

14.    The COVID-19 pandemic also presents a significant operational challenge to the Sritex Group.  The Sritex Group employs approximately 17,186 employees in its various production facilities and, during the COVID-19 pandemic, the Sritex Group has prioritized the health and safety of its employees.  The Sritex Group recognizes and supports the Indonesian Government's efforts to combat the spread of the COVID-19 pandemic and has accordingly made valiant efforts to ensure the safety of its employees.  The operational challenges led to increased pressure on the Sritex Group to maintain a sufficient workforce to meet production requirements. *Id.* ¶ 15.  And while the Sritex Group has managed to operate during the COVID-19 pandemic, its financial health has deteriorated in the recent months as a result of the abrupt change of sentiment towards the textile industry.  This has led to a series of credit rating downgrades.  *Id.* ¶ 16.

---

[2]  *See* International Labour Organization, *What next for Asian garment production after COVID-19* (2020), *available at* https://www.ilo.org/wcmsp5/groups/public/---asia/---ro-bangkok/---sro-bangkok/documents/publication/wcms_755630.pdf.

15.    The credit rating downgrades began on December 18, 2020 when Fitch Ratings revised the Sritex Group's outlook to negative at 'BB-' to, among other things, capture "*the potential risk that the weak funding environment might persist due to prolonged negative sentiment, especially towards the textile sector*".[3]  Fitch Ratings subsequently downgraded the Sritex Group's credit rating to 'B-' on March 25, 2021 and 'CCC-' on April 7, 2021.  Similarly, Moody's Investors Service downgraded the Sritex Group's corporate family rating to 'B1' on December 23, 2020, 'B3' on March 22, 2021 and 'Ca' on April 9, 2021.  *Id.* ¶ 17.

16.    The abrupt change of sentiment towards the textile industry and the subsequent credit rating downgrades (all of which were beyond the Sritex Group's control) caught the Sritex Group by surprise and derailed its liability management efforts.  *Id.* ¶ 18.  The Sritex Group's planned issuance of up to US$325,000,000 in notes to refinance its short-term liabilities could not be completed as the notes issuance had to be postponed due to the unfavorable market conditions caused by COVID-19.  *Id.* ¶ 18.  In addition, the Sritex Group faced an unprecedented challenge in obtaining consent from its syndicated lenders to an extension of the maturity of its syndicated loan facility, and it was reported that the credit rating downgrades led to the banks' risk committees re-reviewing the Sritex Group's financials and subjecting them to more stress tests with new assumptions.  *Id.* ¶ 18.  Moreover, the Sritex Group's efforts to refinance its syndicated loan facility were derailed, as Bank Central Asia and Bank Negara Indonesia, both of whom were previously in discussions with the Sritex Group regarding the refinancing of the syndicated loan facility, began reconsidering the potential refinancing as a result of the credit rating downgrades.  *Id.* ¶ 18.

---

[3]   *See* Fitch Ratings Action Commentary, *Fitch Revises Outlook on Indonesia's Sritex to Negative; Affirms at 'BB-'/'A+(idn)* (December 18, 2020), *available at* https://www.fitchratings.com/research/corporate-finance/fitch-revises-outlook-on-indonesia-sritex-to-negative-affirms-at-bb-a-idn-18-12-2020.

Lastly, the Sritex Group's trade facilities were frozen and the Sritex Group started receiving demand letters from its creditors. *Id.* ¶ 18.

## II.      Consensual Restructuring Process

17.      Not surprisingly, the resulting financial challenges culminated in a liquidity crisis. *Id.* ¶ 19.  On or around March 2021, the Sritex Group engaged Helios Capital and Assegaf Hamzah and Partners to pursue a potential restructuring process and issued a press release in relation thereto. *Id.* ¶ 19.  On April 20, 2021, the Indonesia Foreign Debtors received an involuntary PKPU (*Penundaan Kewajiban Pembayaran Utang*) petition (the "***PKPU Petition***") commenced by a trade creditor, CV Prima Karya. *Id.* ¶ 19.

18.      In light of the PKPU Petition and in an effort to ensure that the PKPU Petition does not derail the Sritex Group's restructuring efforts, the Singapore Foreign Debtors commenced the Singapore Proceedings.  The Singapore Proceedings are intended to provide the Singapore Foreign Debtors and their creditors with the space and time to complete comprehensive restructuring discussions in a sensible manner. *Id.* ¶ 20.

## III.      The Singapore Proceedings

### A.      Singapore Proceedings Generally

19.      Section 64 of the Insolvency, Restructuring and Dissolution Act (No. 40 of 2018) ("***IRDA***") allows a company proposing or intending to propose a scheme of arrangement to its creditors or any class of those creditors ("***Restructuring Plan***") to obtain moratorium protection in a reorganization proceeding supervised by the Singapore Court much like a Chapter 11 proceeding under the Bankruptcy Code.  Chua Declaration ¶ 6.  A copy of the IRDA is attached as **Exhibit A** to the Chua Declaration.

20.      A Singapore Proceeding may be commenced by a company pursuant to the IRDA if the company makes, or undertakes to the Singapore Court to make as soon as practicable, an

application under Section 210 of the Companies Act (Chapter 50, Singapore) (the "***Singapore***

***Companies Act***") for the Singapore Court to order to be summoned a meeting of the creditors or

class of creditors in relation to the Restructuring Plan or an application under Section 71 of the

IRDA to approve the Restructuring Plan.  If the company has not proposed a Restructuring Plan,

the company will be required to provide a brief description of the intended compromise or

arrangement, containing sufficient particulars to enable the Singapore Court to assess whether the

intended compromise or arrangement is feasible and merits consideration by the company's

creditors.  *Id.* ¶ 7.

21.     Upon filing an application for the commencement of a Singapore Proceeding, an

automatic moratorium against any creditor's enforcement action comes into place for a period

starting on the date on which the application is made and ending on the earlier of the date that is

30 days after the date on which the application is made or the date on which the application is

decided by the Singapore Court (the "***Automatic Moratorium Period***").  *Id.* ¶ 8.

22.     During the Automatic Moratorium Period, any creditor of the company may

intervene and seek relief from the Singapore Court in relation to the commencement of the

Singapore Proceeding and the automatic moratorium.  *Id.* ¶ 9.

23.     The Singapore Court will generally hear and decide whether or not to approve the

application for the commencement of a Singapore Proceeding prior to the expiration of the

Automatic Moratorium Period.  In the event the Singapore Court approves the commencement of

a Singapore Proceeding, the Singapore Court may determine the period of time in which the

moratorium will be in place for (the "***Moratorium Period***").  *Id.* ¶ 10.

24.     The Singapore Proceeding is a debtor-in-possession process, meaning that the

management of the company remains in control of the company during the Moratorium Period.

However, the company will be subject to the supervision of the Singapore Court during the Moratorium Period.  During the Moratorium Period:

    (a)    the Singapore Court will generally require the company to submit to the Singapore Court periodic updates on the company's financial affairs including a report on the valuation of each of the company's significant asset, any information relating to the acquisition, disposal or grant of any security by the company, periodic financial reports of the company and the company's subsidiaries, and forecasts of the profitability, and the cash flow from the operations, of the company and the company's subsidiaries;

    (b)    the Singapore Court may, upon request by the company, approve the granting of super priority rescue financing, much like a debtor-in-possession financing in a Chapter 11 case;

    (c)    the Singapore Court may, upon request by a creditor, make an order restraining the company from disposing its property other than in good faith and in the ordinary course of the company;

    (d)    the Singapore Court may, upon request by a creditor, make an order restraining the company from transferring any share in, or altering the rights of any member of, the company; and

    (e)    the Singapore Court may, upon request by a creditor, terminate the Moratorium Period.

*Id.* ¶ 11.

25.    The intent of the Moratorium Period is to provide the company with the time and space to complete the Restructuring Plan and make an application for the Singapore Court's approval and sanction of the Restructuring Plan.  *Id.* ¶ 12.

26.    A Restructuring Plan may be proposed by the company during the Moratorium Period pursuant to Section 210 of the Singapore Companies Act.  Under Section 210 of the Singapore Companies Act, there are three main stages in the process to implement a scheme of arrangement to compromise the debts of the creditors.  First, an application must be made to the Singapore Court for an order that one or more meetings of creditors be summoned to consider and if thought fit to approve the Restructuring.  Second, the Restructuring Plan must be put before

these meetings and approved by three-fourths in value and a majority in number of the creditors

who are present and voting at the meeting.  Third, if and only if the Restructuring Plan is approved

by creditors, the Singapore Court may in its discretion sanction them having regard to the fairness

and reasonableness of the scheme of arrangement.  *Id.* ¶ 13.

27.     Alternatively, a Restructuring Plan may be proposed by the company during the

Moratorium Period pursuant to Section 71 of the IRDA.  Under Section 71 of the IRDA, the

Singapore Court may approve a Restructuring Plan if the Singapore Court is satisfied that, had a

meeting of the creditors been summoned pursuant to Section 210 of the Singapore Companies Act,

the Restructuring Plan would have been approved.  Section 71 of the IRDA is inspired by pre-

packaged chapter 11 cases and the Singapore Court has generally referred to the practices of this

Bankruptcy Court in cases involving applications under Section 71 of the IRDA.  *Id.* ¶ 14.

28.     In the event the company is not able to propose and obtain the sanction of the

Singapore Court of the Restructuring Plan during the Moratorium Period, the company may make

an application to the Singapore Court for an extension of the Moratorium Period.  There is no fixed

time period and the length of the Moratorium Period and any subsequent extension(s) are subject

to the discretion of the Singapore Court.  *Id.* ¶ 15.

**B.     The Singapore Foreign Debtors' Singapore Proceedings**

**1.     <u>The Singapore Applications</u>**

29.     On April 21, 2021, the Singapore Foreign Debtors made applications with the

Singapore Court to commence the Singapore Proceedings pursuant to Section 64 of the IRDA

(the "***Singapore Applications***").  Simms Declaration ¶ 21, Chua Declaration ¶ 16.  The Singapore

Applications are registered under case nos. HC/OS 388/2021 and HC/OS 389/2021.  Simms

Declaration ¶ 21, Chua Declaration ¶ 16.

30.    As described above, the Singapore Applications were made by the Singapore
Foreign Debtors following the PKPU Petition.  The Singapore Proceedings are intended to provide
the Singapore Foreign Debtors and their creditors with the space and time to complete the
restructuring discussions in a sensible manner in light of the PKPU Petition.  Simms Declaration
¶ 22.

31.    The Automatic Moratorium Period commenced on the date of the Singapore
Applications, being April 21, 2021, and ended on May 21, 2021.  Chua Declaration ¶ 17.

   **2.   The Singapore Order**

32.    On May 21, 2021, the Singapore Court issued an order granting the Singapore
Applications (the "***Singapore Order***").  A certified copy of the Singapore Order is attached to each
of the Petitions.  The Singapore Order provides for a 3-month Moratorium Period which can be
extended by the Singapore Court upon application by the Singapore Foreign Debtors, during which
the Singapore Foreign Debtors are required to prepare a Restructuring Plan and seek agreement
with its creditors.  The Singapore Foreign Debtors continue to operate in the ordinary course of
business under the protection of that moratorium.  *Id.* ¶ 18.

33.    In the Singapore Proceedings, Mr. Geoffrey David Simms, the chief executive
officer and partner of PT AJCapital Advisory (the firm that was appointed by the Sritex Group to
assess its financial position and reorganization of its business), was selected and appointed by the
Singapore Court as the Foreign Representative for each of the members of the Singapore Foreign
Debtors in connection with their Chapter 15 Cases.  *Id.* ¶ 19.

34.    The authority given to Mr. Simms by each of the Singapore Foreign Debtors to act
as their Foreign Representative in these Chapter 15 Cases has been acknowledged and approved
by the Singapore Court pursuant to the Singapore Order.  *Id.* ¶ 20.

13

35.     In the Singapore Proceedings, the Singapore Foreign Debtors intend to, and have undertaken to the Singapore Court that they will, present a compromise or arrangement for the restructuring of all of their indebtedness that would allow the Singapore Foreign Debtors to avoid liquidation, ensure the continued employment of the employees, and maximize value for all stakeholders in an equitable manner. *Id*. ¶ 21.

C.      **The Chapter 15 Cases**

36.     On the date hereof, the Foreign Representative filed an Official Form 410 (Chapter 15 Petition for Recognition of a Foreign Proceeding) on behalf of each of the Singapore Foreign Debtors commencing these Chapter 15 cases (the "***Chapter 15 Cases***").  Simms Declaration ¶ 25.

<u>**RELIEF REQUESTED**</u>

37.     The Foreign Representative respectfully requests the entry of an order, substantially in the form attached hereto as <u>**Exhibit A**</u>, pursuant to section 1517(a) of the Bankruptcy Code (a) finding that (i) the Singapore Foreign Debtors are each eligible to be a "debtor" under Chapter 15 of the Bankruptcy Code, (ii) each of the Singapore Proceedings is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code and (iv) the Petition was properly filed and meets the requirements of section 1515 of the Bankruptcy Code, and (b) granting recognition of each of the Singapore Proceedings as a foreign

main proceeding under section 1517 of the Bankruptcy Code and the relief granted under sections 1520 and 1521 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

I.    **The Singapore Foreign Debtors Are Each Eligible to be a "Debtor" Under Chapter 15 of the Bankruptcy Code**

38.    Each Singapore Foreign Debtor qualifies as a "debtor" as that term is defined in section 1502(1) of the Bankruptcy Code because it is an "entity," which includes corporations. *See* 11 U.S.C. §§ 101(15) (definition of "entity," which includes a "person") and 101(41) (definition of "person," which includes "corporations"). As noted above, each of the Singapore Foreign Debtors is a private company incorporated under the laws of Singapore. Simms Declaration ¶ 6.

39.    The Singapore Foreign Debtors each have property in the United States for purposes of being eligible under section 109(a) of the Bankruptcy Code, which requires that a debtor must either reside or have a domicile, a place of business, or property in the United States. 11 U.S.C. § 109(a); *see Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013) (holding that section 109(a) applies to Chapter 15 debtors). Courts in this District have required that the debtor have only nominal property in the United States to be eligible to file a Chapter 15 case. *See, e.g., In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings."); *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("There is no statutory requirement as to the property's minimum value.").

40.    As noted above, each Singapore Foreign Debtor meets the flexible threshold for having property in the United States as required under section 109(a) of the Bankruptcy Code

because each Singapore Foreign Debtor has an interest in the retainer that it paid to its counsel, and each retainer is being held in a New York bank account. *See In re Octaviar Admin. Pty Ltd.,* 511 B.R. 361, 372-374 (Bankr. S.D.N.Y. 2014) (noting the "line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States," and holding that cash in a client trust account maintained by U.S. counsel to the foreign representative satisfied section 109(a)); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, at 413-416 (Bankr. S.D.N.Y. 2014) (holding that a New York bank account over which Chapter 15 debtor possessed power to direct disbursement of funds was property sufficient to establish eligibility for Chapter 15 case in New York).

41.     In addition, Golden Legacy is a party to the 2024 Indenture which is governed by New York Law, and in the 2024 Indenture Golden Legacy consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the 2024 Notes. Simms Declaration ¶ 9, 12.   The New York choice of law and forum selection clauses in the Indenture fulfill the section 109(a) "property in the United States" requirement. *See In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) ("[P]roperty rights can be and typically are tied to the location of the governing law of the contract . . . debt subject to a New York governing law clause and a New York forum selection clause constitutes property in the United States"); *In re Berau Capital Resources Pte Ltd* (*In re Berau*), 540 B.R. 80, 82-84 (Bankr. S.D.N.Y. 2015) (holding that dollar denominated debt documents governed by New York law and containing New York forum selection clauses satisfied the eligibility requirements under section 109(a).

42.     Accordingly, each Singapore Foreign Debtor is eligible to be a Chapter 15 debtor.

IV.      **The Singapore Proceedings are Each Foreign Main Proceedings**

43.      The Singapore Foreign Debtors' Singapore Proceedings are entitled to recognition as foreign main proceedings under Chapter 15 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides that, subject to section 1506 of the Bankruptcy Code, a court "shall" enter an order granting recognition of a foreign proceeding if:

> (i)      such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code;
>
> (ii)     the foreign representative applying for recognition is a person or body; and
>
> (iii)    the petition meets the requirements of section 1515 of the Bankruptcy Code.

11 U.S.C. § 1517(a); *see* H.R. Rep. 109-31, pt. 1 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings . . . [t]he requirements of this section . . . are all that must be fulfilled to attain recognition.").   Section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1517(b)(1).  Here, all of the requirements for recognition of each Singapore Proceeding as a foreign main proceeding are satisfied.

A.      **The Singapore Proceedings Constitute "Foreign Proceedings"**

44.      The Singapore Proceedings are "foreign proceedings" under Chapter 15 of the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  Based on this definition, courts have held that a "foreign proceeding" is one:

(1)     in which acts and formalities are set down in law so that
        courts, merchants and creditors can know them in advance,
        and apply them evenly in practice;

(2)     that has either a judicial or an administrative character;

(3)     that is collective in nature, in the sense that the proceeding
        considers the rights and obligations of all creditors;

(4)     that is located in a foreign country;

(5)     that is authorized or conducted under a law related to
        insolvency or the adjustment of debt, even if the debtor that
        has commenced such proceedings is not actually insolvent;

(6)     in which the debtor's assets and affairs are subject to the
        control or supervision of a foreign court or other authority
        competent to control or supervise a foreign proceeding; and

(7)     that is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136

(S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In

re Oversight & Control Comm'n of Avánzit, S.A.,* 385 B.R. 525 (Bankr. S.D.N.Y. 2008)

(discussing factors).

45.     The Singapore Proceedings are proceedings commenced pursuant to Section 64 of

the IRDA, a Singapore law relating to insolvency or adjustment of debt in which the assets and

affairs of the Singapore Foreign Debtors are subject to control or supervision by a foreign court,

for the purpose of reorganization or liquidation.  For purposes of Chapter 15 recognition, "the

hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that

regulates the final distribution of a company's assets." *Betcorp*, 400 B.R. at 278.  Moreover, a

reorganization proceeding is judicial in character whenever a "court exercises its supervisory

powers."  *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010).  Because the

Singapore Proceedings operate under such statutory framework, it satisfies the first and second factors.

46.     Further, the Singapore Proceedings are collective in nature in that all affected creditors are allowed to participate, and the Singapore Proceedings subject the Singapore Foreign Debtor's assets and affairs to the supervision of the Singapore Court during the pendency of the proceeding.  Chua Declaration ¶ 22.  The objective of the Singapore Proceedings is to effect a financial restructuring of the Singapore Foreign Debtors, and the Singapore Foreign Debtors have represented to the Singapore Court that they intend to propose a compromise or arrangement with their creditors pursuant to Section 210 of the Companies Act or Section 71 of the IRDA.  *Id.*

47.     For these reasons, the Foreign Representative submits that the Singapore Foreign Debtors commenced the Singapore Proceedings for the purpose of reorganization, as required by section 101(23) of the Bankruptcy Code.

48.     Courts in this District and elsewhere have recognized proceedings commenced under Section 210(10) of the Companies Act, which is a predecessor to Section 64 of the IRDA pursuant to which the Singapore Proceedings have been commenced, as foreign proceedings.  *See In re Blue Ocean Resources Pte. Ltd.*, Case No. 18-22806 (RDD) (Bankr. S.D.N.Y. July 9, 2018) [Dkt. No. 19]; *In re Berau Capital Resources Pte Ltd* (*In re Berau*), 540 B.R. 80, 82-84 (Bankr. S.D.N.Y. June 16, 2016) [Dkt No. 40]; *In re Bumi Investment Pte Ltd*, Case No. 14-13296 (REG) (Bankr. S.D.N.Y. March 17, 2017) [Dkt No. 17]; *In re Armada (Singapore) Pte. Ltd.*, Case No. No. 09-10105 (JMP) (Bankr. S.D.N.Y. July 22, 2009) [Dkt No. 45].

49.     Accordingly, the Foreign Representative respectfully requests that the Court finds that each Singapore Proceeding constitutes a "foreign proceeding."

**B.      The Singapore Proceedings are "Foreign Main Proceedings"**

50.      The Singapore Proceedings each qualify as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  *See* 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding that is subject to the petition "is pending in the country where the debtor has the center of its main interests").  The relevant time period to determine the location of a debtor's "center of main interests" ("***COMI***") is the date on which the Chapter 15 petition is filed.  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

51.      While the Bankruptcy Code does not expressly define COMI, it provides that, in the absence of evidence to the contrary, a foreign debtor's registered office is presumed to be its COMI.  *See* 11 U.S.C. § 1516(c); *see also In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012); *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) ("In effect, the registered office . . . is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interest.'").

52.      As set forth above and in the Simms Declaration, Singapore is the center of the Singapore Foreign Debtors' main interests.  Each of the Singapore Foreign Debtors is incorporated under Singapore law and has its registered office in Singapore.  Simms Declaration ¶ 6, 11. Consequently, each of the Singapore Foreign Debtors is entitled to the statutory presumption that its COMI is located in Singapore.  Further, as described above, both Golden Legacy and Golden Mountain are vehicles through which the Sritex Group has raised funds for and on behalf of the Sritex Group through the issuance of the 2024 Notes, which are listed on the Singapore Stock Exchange.  In addition, Golden Mountain is a vehicle through which the Sritex Group carried out

textile trading activities in Singapore and all of its creditors are based in Singapore. The business

and operations of the Singapore Foreign Debtors are all located in Singapore.

53.     Accordingly, as the Singapore Proceedings are pending in the COMI of each of the

Singapore Foreign Debtors, the Singapore Proceedings should be recognized as a foreign main

proceeding.

## V.    The Foreign Representative Satisfies the Requirements of a "Foreign Representative" Under Section 101(24) of the Bankruptcy Code

54.     For recognition under Chapter 15, a foreign proceeding must also have a foreign

representative. *See* 11 U.S.C. § 1517(a)(2). The Foreign Representative respectfully submits that

each Chapter 15 Case was commenced by an authorized "foreign representative" of each

Singapore Foreign Debtor within the meaning of section 101(24) of the Bankruptcy Code. Section

101(24) of the Bankruptcy Code provides as follows:

> The term "foreign representative" means a person or body, including
> a person or body appointed on an interim basis, authorized in a
> foreign proceeding to administer the reorganization or the
> liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding.

11 U.S.C. § 101(24).

55.     The Singapore Court has appointed Mr. Geoffrey David Simms, the chief executive

officer and partner of PT AJCapital Advisory (the firm that was appointed by the Sritex Group to

assess its financial position and reorganization of its business), as the Foreign Representative for

each of the members of the Singapore Foreign Debtors in connection with their Chapter 15 Cases.

Simms Declaration ¶ 23.

56.     Additionally, the respective board of directors of the Singapore Foreign Debtors

have also appointed Mr. Geoffrey David Simms, the chief executive officer and partner of PT

AJCapital Advisory (the firm that was appointed by the Sritex Group to assess its financial position

and reorganization of its business), as the Foreign Representative for each of the members of the

Singapore Foreign Debtors in connection with their Chapter 15 Cases and directed Mr. Simms to

commence a Chapter 15 case for each of the Singapore Foreign Debtors.  Simms Declaration ¶ 24.

Copies of the resolutions of the board of directors are attached to the Petitions.

57.     Accordingly, the Foreign Representative respectfully submits that Mr. Simms is an

authorized foreign representative for all of the Singapore Foreign Debtors.

## VI.     The Petition Was Properly Filed and Satisfied the Requirements of Section 1515 of the Bankruptcy Code

58.     The Foreign Representative properly commenced each Chapter 15 Case in

accordance with sections 1504 and 1509 of the Bankruptcy Code, which require the filing of a

petition for recognition under section 1515 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1504,

1509(a).  In accordance with section 1515(b)(1) and (d) of the Bankruptcy Code, attached to the

Petitions is a certified copy of the Singapore Order.  In accordance with section 1515(c) of the

Bankruptcy Code, the Foreign Representative also submitted a declaration attached to the Petition

for each Singapore Foreign Debtor confirming that there is no other "foreign proceeding" with

respect to the Singapore Foreign Debtors other than the Singapore Proceedings.[4]  Accordingly, the

requirements of section 1515 of the Bankruptcy Code have been satisfied.  Additionally, attached

to the Petitions is (a) a corporate ownership statement containing the information described in

Bankruptcy Rule 7007.1, and (b) a list of foreign persons or bodies authorized to administer foreign

proceedings of the Singapore Foreign Debtors pursuant to Bankruptcy Rule 1007(a)(4).

---

[4]  Although there are no other foreign proceedings with respect to the Singapore Foreign Debtors, the Indonesia Foreign Debtors have commenced foreign proceedings in in the Commercial Court of the District Court of Semarang, pursuant to Law No. 37 of 2004 on Bankruptcy and Suspension of Debt Payment Obligations, and have also filed for relief under chapter 15 of the Bankruptcy Code.  *See Declaration of Gregorius Petrus Aji Wijaya in Support of the Verified Chapter 15 Petition of Indonesia Foreign Debtors and Motion for Provisional Relief*, filed contemporaneously herewith.  The Singapore Foreign Debtors and the Indonesia Foreign Debtors are seeking to have their Chapter 15 cases jointly administered for procedural purposes as they are all part of the Sritex Group.

22

**VII.    The Foreign Representative Should be Entrusted With the Administration of the Singapore Foreign Debtors' Assets in the United States on a Final Basis**

59.    Pursuant to section 1521(a)(5), this Court should entrust the administration or realization of all of the Singapore Foreign Debtors' assets within the territorial jurisdiction of the United States on a final basis.

60.    Upon recognition of the Singapore Proceedings, the Court may entrust assets to the foreign representative or another person.  *See* 11 U.S.C. § 1521(a)(5).  Further, upon recognition, unless the Court orders otherwise, the Foreign Representative is automatically empowered to operate the Singapore Foreign Debtors' "business and exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552."  11 U.S.C. § 1520(a)(3).  This relief is critical to ensure the fair, efficient and centralized administration of the Singapore Foreign Debtors' estates.  Therefore, the Foreign Representative respectfully requests that he be (a) entrusted with the administration of all of the Singapore Foreign Debtors' assets located in the United States and (b) established as the exclusive authority to administer the Singapore Foreign Debtors' assets and affairs in the United States on a final basis.

## NOTICE

61.    Notice of this Verified Petition has been provided to: (a) the Office of the United States Trustee, (b) the Singapore Foreign Debtors,  (c) all parties to any litigation in which any of the Singapore Foreign Debtors is a party and that is pending in the United States as of the commencement of these Chapter 15 Cases, and (d) all known parties against whom provisional relief is sought as set forth in the statements of Foreign Representative required by Federal Rule of Bankruptcy Procedure 1007(a)(4)(B), attached to the Petitions.  The Foreign Representative submits that no other or further notice of this Petition is necessary or required.

## NO PRIOR REQUEST

62.     No prior request for the relief sought in this Petition has been made to this or any

other court.

WHEREFORE, the Foreign Representative respectfully requests entry of an order,

substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and such

other and further relief as is just and proper.

Dated:  New York, New York
        June 7, 2021

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

/s/ *Matthew J. Williams*
Matthew J. Williams
John Conte
200 Park Avenue
New York, NY 10166
(212) 351-4000 (Tel)
(212) 351-4035 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PT SRI REJEKI ISMAN TBK, *et al.*,[1] | Case No. 21-_____ |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## STATEMENT OF VERIFICATION

Pursuant to 28 U.S.C. § 1746, Geoffrey David Simms hereby declares as follows under

penalty of perjury under the laws of the United States of America as follows:

1.    I am the authorized foreign representative of each of the Indonesia Foreign Debtors

and I am authorized to file this Petition and to commence and act in these Chapter 15 Cases.

2.    I have read the foregoing Petition and believe that the factual allegations contained

therein are true and accurate to the best of my knowledge, information and belief.

Executed on ____June 7____ 2021,
in Jakarta, Indonesia.

_____
Geoffrey David Simms
Foreign Representative

---

[1]   The Foreign Debtors in these chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia, (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, and (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PT SRI REJEKI ISMAN TBK,, *et al.*,[1] | Case No. 21-_____ |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

**ORDER RECOGNIZING FOREIGN PROCEEDING**
**FOR SINGAPORE FOREIGN DEBTORS**

Upon the *Verified Petition of Singapore Foreign Debtors Under Chapter 15 for Recognition of a Foreign Main Proceeding* (the "***Verified Petition***" and, together with the Chapter 15 Petition for Recognition of a Foreign Proceeding (Official Form 401) filed immediately prior hereto for each Singapore Foreign Debtor, the "***Petitions***")[2] of Geoffrey David Simms, in his capacity as the authorized foreign representative (the "***Foreign Representative***") of each of the Singapore Foreign Debtors, in support of entry of an order pursuant to sections 1517(a) and 1521(a)(6) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "***Bankruptcy Code***") (a) finding that (i) each Singapore Foreign Debtor is eligible to be a "debtor" under Chapter 15 of the Bankruptcy Code, (ii) the Singapore Proceedings are "foreign main proceedings" within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the

---

[1] The Foreign Debtors in these chapter 15 cases are the following entities: (a) PT Sri Rejeki Isman Tbk, whose address is at Jl. K.H. Samanhudi No. 88, Ds./Kl. Jetis, Kec. Sukoharjo, Kab. Sukoharjo, Central Java, Indonesia, (b) PT Sinar Pantja Djaja, whose address is at Jl. Condrokusumo No 1, Kec. Semarang Barat, Semarang, Central Java, Indonesia, (c) PT Bitratex Industries, whose address is at Jl. Brigjend Sudiarto KM. 11, Kel. Plamongansari, Kec. Pedurungan, Semarang, Central Java, Indonesia, (d) PT Primayudha Mandirijaya, whose address is at Dk. Kadang, Ds. Ngadirojo, Kec. Ampel, Kab. Boyolali, Central Java, Indonesia, (e) Golden Legacy Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913, and (f) Golden Mountain Textile and Trading Pte Ltd, whose address is at 120 Robinson Road, #08-01, Singapore 068913.

[2] Capitalized terms used herein but not otherwise defined shall have the respective meanings ascribed to such terms in the Verified Petition.

requirements of a "foreign representative" of each Singapore Foreign Debtor under section 101(24) of the Bankruptcy Code, and (iv) each Petition was properly filed and meets the requirements of section 1515 of the Bankruptcy Code, (b) granting recognition of the Singapore Proceedings as foreign main proceedings under section 1517 of the Bankruptcy Code and granted the relief under section 1520 of the Bankruptcy Code; and upon the hearing (the "***Hearing***") on the Petitions and this Court's review and consideration of the Petitions, the Simms Declaration and the Chua Declaration; and appropriate and timely notice of the filing of the Petitions and the Hearing having been given; and no other or further notice being necessary or required; and the Court having determined that the legal and factual bases set forth in the Petition and all other pleadings and proceedings in this case establish just cause to grant the relief ordered herein, and after due deliberation therefore,

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      This Court has jurisdiction to consider the Petitions and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated as of January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).

B.      The consideration of the Petitions and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

C.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

---

[3] The findings and conclusions set forth herein and on the record of the Hearing to consider the Petitions constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

D.      Good, sufficient, appropriate, and timely notice of the filing of the Petitions and the Hearing has been given by the Foreign Representative, pursuant to Bankruptcy Rules 1011(b) and 2002(q) and the *Order Scheduling a Hearing on Chapter 15 Petition for Recognition and Specifying the Form and Manner of Service of Notice* [Dkt. No. ____] to: (a) the United States Trustee for the Southern District of New York, (b) the Singapore Foreign Debtors, (c) the parties authorized to administer the Singapore Proceedings as set forth in the Petition, (d) all parties to any litigation in which any of the Singapore Foreign Debtors is a party and that is pending in the United States as of the commencement of these Chapter 15 Cases, (e) all known parties against whom provisional relief is sought as set forth in the statements of Foreign Representative required by Federal Rule of Bankruptcy Procedure 1007(a)(4)(B), attached to the Petitions, and (f) all parties that have filed a notice of appearance in these Chapter 15 Cases. In light of the nature of the relief requested and prior orders of this Court, no other or further notice is required.

E.      No objections or responses were filed that have not been overruled, withdrawn, or otherwise resolved.

F.      Each Singapore Foreign Debtor is "eligible" to be a debtor in the Chapter 15 Case pursuant to sections 109 and 1501 of the Bankruptcy Code.

G.      The Singapore Proceedings are "foreign proceedings" as such term is defined in section 101(23) of the Bankruptcy Code.

H.      The Singapore Proceedings are pending in Singapore, which is where each Singapore Foreign Debtor has its "center of main interests" as referred to in section 1517(b)(1) of the Bankruptcy Code. As such, the Singapore Proceedings are "foreign main proceedings" pursuant to section 1502(4) of the Bankruptcy Code and are entitled to recognition as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code.

I.    The Foreign Representative is a "person" as such term is defined in section 101(41) of the Bankruptcy Code and has been appointed and designated as the "foreign representative" of each Singapore Foreign Debtor as such term is defined in section 101(24) of the Bankruptcy Code.

J.    These Chapter 15 Cases were properly commenced pursuant to sections 1504 and 1509, and each Petition satisfies the requirements of section 1515 of the Bankruptcy Code and Rule 2002(q) of the Federal Rules of Bankruptcy Procedure.

K.    The relief sought by the Petitions will not cause undue hardship or inconvenience to any party in interest and, to the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Singapore Foreign Debtors, their estates and all of their creditors.

L.    The relief granted hereby is necessary to effectuate the purposes and objections of Chapter 15 and to protect the Singapore Foreign Debtors and the interests of their creditors and other parties in interest.

M.    Appropriate notice of the filing of, and the Hearing on, the Petitions was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

N.    The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to section 1507, 1517, 1520, and 1521 of the Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:**

1.    The Petitions and the relief requested in this Order are granted as set forth herein, and any objections or responses thereto that have not been withdrawn or resolved are overruled with prejudice.

4

2.      The Singapore Proceedings are recognized as "foreign main proceedings" pursuant to sections 1517(a) and 1517(b)(1) of the Bankruptcy Code.

3.      All relief and protections afforded foreign main proceedings under section 1520 of the Bankruptcy Code are hereby granted to the Singapore Proceedings, each Singapore Foreign Debtor and each Singapore Foreign Debtor's assets located in the United States, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to each Singapore Foreign Debtor and its property within the territorial jurisdiction of the United States.

4.      All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and his authorized representatives and agents, are hereby enjoined from:

> a.      execution against any Singapore Foreign Debtors' assets;
>
> b.      the commencement or continuation, including the issuance or employment of process, of a judicial, quasi-judicial, administrative, regulatory, arbitral, bankruptcy, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against any Singapore Foreign Debtor, which in either case in any way relates to, or would interfere with, the administration of any Singapore Foreign Debtors' estate in the PKPU Proceeding;
>
> c.      the enforcement of a judgment against any Singapore Foreign Debtor or against property of any Singapore Foreign Debtor;
>
> d.      any act to obtain possession of property of any Singapore Foreign Debtor's estate or of property from any Singapore Foreign Debtor's estate or to exercise control over property of any Singapore Foreign Debtor's estate;
>
> e.      any act to create, perfect, or enforce any lien against property of any Singapore Foreign Debtor's estate;
>
> f.      any act to collect, assess, or recover a claim against any Singapore Foreign Debtor; and

5

g.    transferring, relinquishing or disposing of any property of any Singapore Foreign Debtor to any entity other than the Foreign Representative and his authorized representatives and agents;

*provided*, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States.

5.    Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to the Singapore Foreign Debtors by this Court pursuant to section 1519(a) of the Bankruptcy Code shall be extended and any order granting provisional relief shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

6.    The Foreign Representative is recognized as the "foreign representative" of each Singapore Foreign Debtor as defined in section 101(24) of the Bankruptcy Code in respect of the Singapore Proceedings.

7.    The Foreign Representative is entrusted with the administration and realization of all of the Singapore Foreign Debtors' assets located in the United States and is established as the exclusive authority to administer the Singapore Foreign Debtors' assets and affairs in the United States.

8.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

9.    No action taken by the Foreign Representative in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the Singapore Proceedings, the documents contemplated thereunder, this Order, the Chapter 15 Cases, any further order for additional relief in the Chapter 15 Cases, or any adversary proceedings in connection therewith, will be deemed to constitute a waiver of the immunity afforded the Foreign Representative in its capacity as such under sections 306 or 1510 of the Bankruptcy Code.

10.     The Foreign Representative, the Singapore Foreign Debtors, and each of their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

11.     Notwithstanding Bankruptcy Rule 7062, made applicable to these Chapter 15 Cases by Bankruptcy Rule 1018, this Order shall be immediately effective and enforceable upon its entry.

12.     This Court shall retain jurisdiction with respect to:  (i) the enforcement, amendment or modification of this Order; (ii) any requests for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases; and (iii) any request by an entity for relief from the provisions of this Order, for cause shown as to any of the foregoing and provided that the same is properly commenced and within the jurisdiction of this Court.


Dated: New York, New York
           _____, 2021

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE